(June 3, 1911.)

## WILLET D. TREGO, Appellant, v. WILLIAM ARAVE, Respondent.

[116 Pac. 119.]

SALE OF HAY—CONTRACT FOR—VIOLATION OF—KIND AND QUALITY— SUFFICIENCY OF EVIDENCE — PROFITS — ELEMENT OF DAMAGES — ADMISSION OF EVIDENCE—SAMPLE OF HAY AS EXHIBIT.

(Syllabus by the court.)

1. Where a contract was made for the sale of 300 tons of "good merchantable" hay to be baled and shipped, the words "good merchantable" are descriptive of the quality of the hay required by the contract, and means such hay as is vendible on the market, or salable on the market, at the ordinary price on such market.

2. Where hay is purchased to be sold on open market and the purchaser had contracted to sell the same for a certain price on said market, and the person from whom he purchased it failed to comply with his part of the contract in regard to the quality of the hay, it was error for the court to reject evidence tending to prove the reasonable profits that would have been made by the purchaser had the seller delivered the hay in accordance with the contract, as such profit is an element of damage that may be recovered in an action brought for that purpose.

3. If a purchaser of hay makes a contract for the resale of such hay and discloses that fact to his vendor, who undertakes to furnish the hay and deliver it at a specified time and place, and his vendor fails to deliver the hay, he will be liable for damages on the basis of the reasonable profits the buyer would have realized from a resale of the hay.

4. On the trial of an issue as to whether the hay alleged to have been sold was good merchantable hay as provided by the contract of

sale, it was error to admit as an exhibit a bundle of such hay for the inspection of the jury, as the jurors had not qualified on the question of whether they knew what good merchantable hay was in the market where this hay was sold; and especially is that true in this case, as the sample introduced was not proven to be a fair sample of the hay alleged to have been sold.

5. The merchantable quality of said hay should have been determined or established by the evidence of experts or by men who knew what merchantable hay was in the markets where this hay was sold, and who had inspected said hay or an average sample of it.

APPEAL from the District Court of the Sixth Judicial District for Bingham County. Hon. Jas. M. Stevens, Judge.

Action to recover damages for breach of contract for the sale of hay. Judgment for defendant. *Reversed.*

Hansbrough & Gagon, for Appellant.

Merchantable means fit for sale; vendible in the market; of a quality such as will bring the ordinary market price. (Black's Law Dictionary, p. 768; *Pacific Coast Elevator Co. v. Bravinder*, 14 Wash. 315, 44 Pac. 544.)

In this case the purchase price having been paid, the burden was upon the defendant to prove that he tendered the plaintiff good merchantable hay of the kind and quality sold. (*Bates v. Lyman*, 35 Kan. 634, 12 Pac. 35; *Kelly v. Pierce*, 16 N. D. 234, 112 N. W. 995, 12 L. R. A., N. S., 180.)

If plaintiff can show the profits he claims were reasonably certain to be realized by him if the contract had been fulfilled, and also that the defendant was at fault for not fulfilling same, he may recover the same. (1 Sutherland on Damages, 3d ed., sec. 63; *Schumaker v. Heinemann*, 99 Wis. 251, 74 N. W. 785; *Barrett v. Grand Rapids Veneer Works*, 110 Mich. 6, 67 N. W. 976.)

If the buyer has in advance made a contract for the resale and discloses that fact to his vendor, who undertakes to furnish the commodity and deliver it at a specified time and place, arranged with reference to enabling the buyer to fulfill his contract for resale, and the vendor fails to deliver the property, he will be liable to damages on the basis of the

profits the buyer would realize upon his contract for such sale. (3 Sutherland on Damages, 3d ed., p. 1932; *Bluegrass Cordage Co. v. Luthy,* 98 Ky. 583, 33 S. W. 835; *Wakeman v. Wheeler Co.,* 101 N. Y. 205, 54 Am. Rep. 676, 4 N. E. 264; *Liggett Co. v. Mich. B. Co.,* 106 Mich. 445, 64 N. W. 466; *Jordan v. Patterson,* 67 Conn. 473, 35 Atl. 521.)

The question as to whether the hay in question which was tendered under the contract was "merchantable" as stipulated therein is to be determined by experts and not by an inspection by the jury. (*Pacific Coast Elevator Co. v. Bravinder,* 14 Wash. 315, 44 Pac. 544.)

St. Clair & St. Clair, for Respondent.

In considering the question of merchantable hay, it must be borne in mind that merchantable hay is not necessarily the best in the market, nor necessarily the second best; that each case must be governed by its own facts and circumstances, and that it must be at least of medium quality and goodness, or of fair average quality, according to kind, free from remarkable defects and as such salable in the market for the ordinary price. (Mechem on Sales, secs. 1340, 1341; 5 Words and Phrases, 4489, tit. "Merchantable.")

SULLIVAN, J.—This action was brought to recover damages because of an alleged breach of a contract for the delivery of 300 tons of good merchantable alfalfa hay. The cause was tried by the court with a jury and a verdict was rendered in favor of the defendant, and this appeal is from the judgment entered on said verdict and from an order denying a new trial.

Many errors are assigned in regard to the sufficiency of the evidence and the admission and rejection of certain evidence offered on the trial. The alleged errors from one to eight, inclusive, relating to the insufficiency of the evidence to justify the verdict, are discussed by appellant under one head, and it is first contended by counsel for appellant that the main question to be determined in this case is whether or not the hay in question was of the kind and quality sold, plain-

tiff contending that it was not of the kind and quality sold and defendant contending that it was. The jury found in favor of the defendant's contention. The following is a copy of the contract entered into for the sale of said hay:

"$1,800.00.          Blackfoot, Idaho, December 4, 1906.

"This certifies that I hereby sell to W. D. Trego, of Blackfoot, Idaho, 300 tons of good merchantable alfalfa hay to be baled by W. D. Trego, to be delivered at O. B. cars Shelley, on or before the 1st day of March, 1907. And I hereby acknowledge the receipt of Eighteen Hundred Dollars as full payment for the same.

(Signed)  "WILLIAM ARAVE."

The main question arises over the quality of the hay offered by the respondent to the appellant in compliance with his part of said contract, and it is contended that the hay offered was not "good merchantable" hay within the meaning of that term as used in said contract. It is also contended that the evidence is insufficient to justify the verdict, and that there is no substantial evidence to support it.

Since the court has concluded that the judgment must be reversed and a new trial granted upon errors of law occurring at the trial, we shall not dispose of the assignments of error, one to eight, inclusive, going to the sufficiency of the evidence to sustain the verdict. We have, however, carefully considered the evidence, and would say that it is very doubtful whether there is substantial evidence in the record to support the verdict, but we do not pass upon that question.

The errors assigned from nine to twenty-nine, inclusive, refer to the admission and rejection of evidence by the court over the objection of appellant. The evidence tends to show that the appellant had the hay in question sold in Salt Lake City, and it is contended that the appellant had the right to prove to the jury the price at which he had sold it to show the profit he would have made. It is a rule of law that the liability for the profits which would have resulted from the performance of a contract is coextensive with the right to contract, and if plaintiff can show the profits he claims were

reasonably certain to be realized by him if the contract had been fulfilled, and also that the defendant was at fault for not fulfilling the same, he may recover such reasonable profits. (1 Sutherland on Damages, 3d ed., sec. 63; *Schumaker v. Heinemann,* 99 Wis. 251, 74 N. W. 785; *Barrett v. Grand Rapids Veneer Works,* 110 Mich. 6, 67 N. W. 976.) The court erred in rejecting any testimony offered tending to show that the hay had been resold in Salt Lake, the price for which it was sold, and the profits that would have been received by the appellant had the contract been fulfilled, and that defendant's failure to furnish such hay as he had sold to appellant resulted in the loss of such prospective profits to appellant.

It is contended by appellant that the court erred in overruling plaintiff's objection to the following question propounded to the appellant by the defendant on cross-examination, designated as the eleventh assignment of error:

Q. "Did Mr. Arave tell you in that conversation that there was some sweet clover in some of this hay and that he wanted you to inspect the hay before any deal was made?"

Said question was objected to on the ground that it was incompetent for any purpose, as the written contract was the best evidence.

The twelfth error assigned was to the following question propounded to the appellant:

Q. "Did he ask you whether you had had this hay inspected and didn't you reply to that that the hay was all right?"

The fourteenth error assigned was the action of the court in overruling plaintiff's objection to the following question propounded to the defendant:

Q. "Now, Mr. Arave, at the time this contract was made with Mr. Trego, was anything said by you to Mr. Trego as to the inspection of this hay before the deal was consummated?"

So far as assignments Nos. 11, 12 and 14 are concerned, the evidence was no doubt produced on the theory that the contract was made with the hay on the Arave ranch in view, and if it could be shown that the appellant contracted for said

hay and declined to inspect it, but was willing to accept that
hay under said contract as good merchantable hay, that evi-
dence was proper and there was no error in the admission
of it.

The sixteenth assignment of error is in regard to the over-
ruling of plaintiff's objection to the following question pro-
pounded to the defendant:

Q. "In making this transaction, was any price named per
ton for this hay that you were dealing with Mr. Trego for?"
To this question the defendant answered as follows: "No, sir;
no price." This question and the answer thereto are immate-
rial, for the reason that the contract specifies 300 tons for
$1,800, which would make the average price per ton six dol-
lars. If the hay on the Arave ranch was the identical hay
sold at the time of the contract, and the appellant conceded
that the hay was good merchantable hay and declined to in-
spect it, but was willing to take defendant's word for it, it
was proper to show those facts. While the rule is that a
complete and valid contract merges all prior and contem-
poraneous agreements within its purview, and any parol agree-
ment prior to or contemporaneous with such written contract
which tends to vary or contradict the same either in its express
provisions or in its legal import is inadmissible, yet if the
parties contract with reference to certain hay and it is the
understanding that that is the identical hay purchased and
sold, then the terms used in such contract with reference to
the quality apply to that hay.

Appellant's assignments of error Nos. 17, 18, 19 and 23
refer to the amount of hay respondent had on his ranch be-
tween December 4, 1906, and March 1, 1907. The purpose of
this testimony was to show that he had the amount of hay
sold to appellant on his ranch between said dates, and we do
not think it was error to permit him to show the amount and
quality of the hay he had during that time, and the admission
of said evidence was not error. If the answer was merely a
guess, the jury would take it for what it was worth.

Appellant's assignments of error Nos. 20, 24, 25 and 26
refer to the market price of hay during certain months in

1907 at Shelley, Idaho, no doubt with a view to show that the price of hay had gone down since the purchase. This testimony was certainly incompetent, if, as the record shows, the hay was purchased for the purpose of filling orders in Salt Lake and that the hay had been sold at a certain price prior to March 1st, 1907. However, if the hay had not been resold by the appellant, then it would have been proper to show the price of hay at Shelley, Idaho, as that was the point where the hay was to be delivered f. o. b., and if it could be shown that hay had declined in price so that there would have been no profit in it, it would have been competent to show that in order to show that the appellant had not been damaged because of any profits he might derive from a resale of the hay. Respondent could not fail and refuse to comply with said contract in furnishing the hay at the time he agreed to do so and prevent the purchaser from procuring the price for which he had sold the hay and reduce damages by showing that the price of hay had declined in value in February, 1907, at Shelley, Idaho. The appellant testified that he told the respondent that he wanted the hay to bale and to ship to Salt Lake and that this hay was for that purpose. Respondent testified that he did not remember this conversation. If a buyer has in advance made a contract for the resale of certain property and discloses that fact to the vendor, who undertakes to furnish the commodity and deliver it at a specified time and place, arranged with reference to enabling the buyer to fulfill his contract for resale, and the vendor fails to deliver the property, he will be liable for damages on the basis of the reasonable profits the buyer would realize from such sale. (3 Sutherland on Damages, 3d ed., p. 1932; *Bluegrass Cordage Co. v. Luthy*, 98 Ky. 583, 33 S. W. 835; *Wakeman v. Wheeler Co.*, 101 N. Y. 205, 54 Am. Rep. 676, 4 N. E. 264; *Liggett Co. v. Mich. B. Co.*, 106 Mich. 445, 64 N. W. 466; *Jordan v. Patterson*, 67 Conn. 473, 35 Atl. 521.)

Appellant's assignment of error No. 21 refers to the introduction of a small bale of hay by respondent, over the objection of appellant. It appears that the respondent had gone to a certain stack of hay and cut out a chunk of the hay

about eighteen inches square and put a wire around it and offered it as an exhibit on the trial of the case, and the court admitted it for consideration by the jury as an exhibit or sample of the hay in the stacks. The only purpose of this was to show the kind or quality of the hay. It is contended that the introduction of this exhibit was incompetent and highly prejudicial to the rights of appellant for two reasons: first, because the respondent himself testified that he could not swear that the bunch of hay introduced was a fair sample of his hay; and, second, that that is not the proper way to prove the kind and quality of hay. The respondent testified as follows: "I can't say that that sample was just an average sample of all of my hay or not. I cut it out of the stack and took it just as it come." Counsel contends that the only method of proving that said hay was good merchantable hay was by experts who had examined it and had qualified to testify as to what was good merchantable hay in that region of country, and that the jurors may have known nothing about hay, and before they could pass upon that question they would have to qualify as experts.

In many cases a sample is receivable in evidence to show the quality or condition of the entire lot or mass from which it is taken. In *Eppes v. State,* 102 Ind. 539, 1 N. E. 491, a question was raised as to whether a certain substance contained arsenic and another sample from the same package was admitted to show the absence of arsenic; but such samples could not be passed upon by the jury, but must be submitted to experts who, after making an analysis, would testify as to the contents of the package.

In *Commonwealth v. Schaffner,* 146 Mass. 512, 16 N. E. 280, which involved the question of whether certain milk was of good quality, a sample was taken by the inspector from the defendant's milk wagon on the same day and at substantially the same time, and it was admitted to show the bad quality of the milk. But no one would contend that in either of the cases above referred to the jury, as a jury, would be competent to judge of the samples introduced. In those cases it was proper to admit the samples in evidence and have

them tested by experts and allow such experts to testify before the jury as to what the samples contained. In the case at bar, had it been shown the sample was an average of the whole amount of hay, the jurors would not have been competent to decide from it whether it was good merchantable hay or not, even if they were hay merchants or knew of their own knowledge what good merchantable hay was in that community; but until they had qualified as experts, they would not have been competent witnesses although competent as jurors. If the sample of hay introduced in evidence had been shown to be a fair sample of the hay on plaintiff's ranch which he claimed to have sold to the appellant, and witnesses who knew what good merchantable hay was in that country had been permitted to examine it and give to the jury their opinion whether such sample was good merchantable hay, such evidence would have been proper and the sample would have been properly admitted for that purpose; but to admit the sample simply for an inspection by the jury was clearly error. Part of the jurors might have been experts in that matter and part not, and on appeal, if the sample were presented as an exhibit, neither of the justices of this court might have known whether it was merchantable hay within the meaning of that term. The merchantable quality of the hay should have been determined by experts or by men who knew what merchantable hay was, and not on an inspection made by the jury. The admission of said exhibit was prejudicial error.

For the reasons above given, the verdict of the jury must be set aside and a new trial granted, and it is so ordered. Costs are awarded to the appellant.

Ailshie, J., concurs.