PIGGLY-WIGGLY STORES, INCORPORATED, v. LOWEN-STEIN ET AL.

[No. 24,173. Filed May 14, 1925. Rehearing denied December 10, 1925.]

1. APPEAL.—*Submission of issues to trial is part of the trial, and rulings on motions to submit certain equitable issues to trial by the court cannot be assigned as error, but they must be specified as causes for a new trial.*—The submission of issues for trial by the court or by a jury is a part of the trial and the refusal of the court to submit certain equitable issues for trial by the court cannot be assigned as error on appeal, but can only be reviewed by specifying the rulings on such motions as causes for a new trial. p. 66.

2. PARTNERSHIP.—*Defendant has burden of proof as to facts alleged in plea in abatement setting up non-compliance with statute requiring filing names of partners with county clerk.*—A plea in abatement on the ground that plaintiffs had been doing business under a trade name, which did not disclose their surnames, without complying with §12160 Burns 1926, §9711a Burns 1914, constituted an affirmative defense on which the defendant had the burden of proof. p. 67.

3. TRIAL.—*Silence of a special finding as to fact in issue equivalent to finding against party having burden of proof thereon.*—The silence of a special finding as to a fact in issue is equivalent to a finding against the party having the burden of proof as to such fact. p. 67.

4. PARTNERSHIP.—*Finding that no fee was paid for filing partnership certificate did not negative finding that certificate was filed.*—Since the statute does not require the payment in advance of a fee for filing a certificate of the names of partners

under the provisions of §12160 *et seq.* Burns 1926, §9711a *et seq.* 1914, a finding that no fee was demanded by the clerk and none was paid did not negative the fact otherwise found that a certificate was filed.  p. 68.

5.  PARTNERSHIP.—*Plea in abatement alleging, that plaintiffs had not complied with the statute requiring filing of certificate with county clerk was not plea denying, their legal capacity, to sue.* —A plea in abatement alleging that plaintiffs had been doing business under a trade name which did not disclose their surnames without complying with §12160 Burns 1926, §9711a Burns 1914, was not a plea denying their legal capacity to sue within §389 Burns 1926, §371 Burns 1914, so as to throw upon the plaintiffs the burden of providing that they had filed the required certificate with the county clerk.  p. 68.

6.  PLEADING.—*Want of legal capacity, to sue refers to some legal disability, such as infancy, idiocy, or the like.*—That "the plaintiff has not legal capacity to sue," as used in the statutes relating to pleadings, has reference to some legal disability, such as infancy, idiocy, or the like.  p. 68.

7.  PLEADING.—*When issue on plea in abatement decided for plaintiff, plea has no further effect when issues on merits come on for trial.*—Where the issue raised by a plea in abatement is submitted for trial and results in a decision for the plaintiff, the plea is without further effect when the issues on the merits come on for trial.  p. 68.

8.  PARTNERSHIP.—*Statute does not prohibit partnership from executing, contracts until certificate giving, partners' names is filed with clerk, and, therefore, does not invalidate them.*— Section 12160 *et seq.* Burns 1926, §9711a *et seq.* 1914, requiring partners doing business under a trade name which does not disclose their surnames to file a certificate with the county clerk stating full name and residence of each partner does not prohibit the partnership from executing contracts until the required certificate is filed, and, therefore, does not invalidate such contracts.  p. 69.

9.  APPEAL.—*Not reversible error to refuse to permit filing, of additional paragraph of answer which did not state a defense.* —The refusal to permit the filing of an additional paragraph of answer could not constitute reversible error where the facts alleged in the proposed paragraph did not state a defense to the action.  p. 69.

10.  CUSTOMS AND USAGES.—*Expressed intent of parties in written contract cannot be controlled by, evidence of custom or usage.*—Where a written contract is complete and certain in its terms, the expressed intent of the parties cannot be controlled by, evidence of a custom or usage.  p. 69.

11. CUSTOMS AND USAGES.—*Agreement to purchase quantity of "fine granulated sugar" could not be nullified by proof of custom that purchaser not bound to accept sugar unless refined at designated factory.*—An agreement to purchase and pay for a definite quantity of "fine granulated sugar" could not be nullified by proof of a custom that the purchaser need not accept and pay for any such sugar unless it was refined at a designated factory. p. 69.

12. TRIAL.—*Equitable issue joined with issues of law may be tried at different time from the issues of law.*—Under the provisions of §437 Burns 1926, §418 Burns 1914, §409 R. S. 1881, where the defendant had filed a cross-complaint seeking the reformation of the contract sued on, the trial court had the right to try the equitable issue on the cross-complaint at a different time from the trial of the issues of law on the complaint. p. 72.

13. TRIAL.—*Statements of plaintiff's counsel as to what he expected to prove and as to evidence in his possession were harmless when court properly admonished the jury to disregard all such statements.*—Statements of plaintiff's counsel, on being questioned by the court as to the materiality of testimony which he offered in evidence, that the witness, as defendant's attorney, had previously "taken steps to defeat" the contract sued on, and that he (plaintiff's counsel) "had the evidence here in his hand," was not harmful to defendant, the court having admonished the jury shortly before and again in giving instructions that it should disregard all statements of counsel as to what they expected or offered to prove. p. 72.

14. APPEAL.—*Verdict based on conflicting evidence will not be disturbed on appeal where there was evidence fairly supporting the verdict.*—An appellate tribunal will not disturb a verdict based on conflicting evidence where there was evidence which, if believed, fairly supported the verdict. p. 74.

15. WITNESSES.—*Extent of cross-examination within trial court's discretion.*—The extent of the cross-examination of a witness is subject to the control of the trial court, in the exercise of a sound legal discretion. p. 74.

16. APPEAL.—*Refusal to permit witness to answer question not available error where no offer to prove answer expected.*— The refusal to permit a witness to answer a question on direct examination is not available error where there was no offer to prove what the answer would be if the witness was permitted to answer the question. p. 74.

17. APPEAL.—*Admission of testimony that defendant operated a chain of stores over the country not prejudicial error where defendant's witnesses had given similar testimony.*—Where it

had been proved by defendant's witnesses that it operated stores in several different cities, including two or more in Indiana, and that it was a corporation with headquarters at Memphis, Tennessee, permitting a witness to answer that it operated "a chain of stores over the country," was not prejudicial error. p. 74.

18. WITNESSES.—*Cross-examination as to witness' relations with the defendant and as to whether he was drawing salary while attending trial proper as tending to show his interest.*— Cross-examination of witness as to his relations with the defendant and as to whether he was drawing a salary for the time spent in coming to and attending the trial was proper as tending to show his interest. p. 75.

19. WITNESSES.—*Defendant's business manager having testified as to reason given for rejecting half carload of sugar was properly cross-examined as to contracts about other shipments of sugar for purpose of testing his credibility.*—Where defendant's business manager had testified that he rejected a half carload of sugar delivered in barrels for the sole reason that the contract of purchase called for its delivery in bags, he was properly asked on cross-examination whether he knew at the time that defendant was under contract to take a half-car of the same sugar packed in barrels, as it went to his credibility as to the reason given for rejecting the sugar. p. 75.

20. APPEAL.—*Overruling an objection to a question not reversible error where no testimony was given in answer to it.*— Overruling an objection to a question is not reversible error where no testimony was given in answer to it. p. 75.

21. EVIDENCE.—*Conversation of agent alleged to contain admissions against interest held properly excluded because time and circumstances thereof not sufficiently proved to show authority of agent or relevancy of admissions.*—A conversation by plaintiffs' business manager alleged to include certain admissions against plaintiff's interest was properly excluded where the time and circumstances under which the conversation occurred were not sufficiently proved to show that the alleged admissions were made while acting within the scope of his authority in the transaction of plaintiffs' business or that such admissions were pertinent. p. 75.

22. EVIDENCE.—*Sample of sugar taken from bag in doorway of car containing shipment of sugar held properly excluded.*—In an action by seller for buyer's breach of contract by refusing to accept sugar shipped to him under the contract, in which the only evidence offered to show that the sugar delivered to

defendant was not of quality and grade ordered was testimony that one bag in the doorway of the car in which it was shipped had been snagged and some of the sugar had spilled and was "off color," "dark sugar," or a "little brown," a sample of which was offered in evidence, *held* that it was properly excluded, as it could not be known that that bag was a fair sample of the shipment, nor could it be assumed that the jurors had such expert knowledge of sugars that they could judge intelligently whether a sample of sugar offered for their inspection would grade as "fine" granulated sugar or was "off color" because too dark.  p. 76.

From St. Joseph Superior Court; *Roland Obenchain,* Special Judge.

Action by Maurice and Abe Lowenstein against the Piggly-Wiggly Stores, Incorporated. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Shively, Gilmer, Arnold & Doran* and *Dudley M. Shively,* for appellant.

*Eli F. Seebirt, Daniel D. Schurtz* and *Anthony Wolfe,* for appellees.

EWBANK, J.—The appellees, Maurice and Abe Lowenstein, as plaintiffs, brought suit in their individual names against appellant, as defendant, to recover

1.  damages for the alleged breach of two written contracts of sale, signed by appellant and by the Hoosier Mercantile Company, in which name the complaint alleged plaintiffs were conducting business as partners. The errors properly assigned are: (1) Sustaining a demurrer to the second paragraph of defendant's answer; (2) overruling defendant's motion for leave to file a fourth paragraph of answer; and (3) overruling defendant's motion for a new trial. Appellant has attempted, also, by an independent assignment of error to challenge the refusal of the trial court to submit certain equitable issues for trial and finding by the court, as requested by its motions made at different stages of the proceedings. But the submission of is-

sues for trial by the court or by a jury is part of the trial, and only those rulings upon motions to submit which were specified as causes for a new trial are presented for review on appeal. *Childers* v. *First Nat. Bank* (1897), 147 Ind. 430, 436, 46 N. E. 825.

Appellant specified thirty-one alleged causes for a new trial, and in its brief has noted thirty-one "points," relating to as many different rulings complained of, many being subdivided, so that appellee, in answering its propositions, one after the other, has stated seventy-one "points." Such diffuse treatment of the many subjects precludes a comprehensive statement of the positions taken by the parties, and the reasons on which the court bases its decisions of each question suggested. The court is not justified in writing so much in an opinion that would be of no permanent value to the legal profession.

The defendant pleaded in abatement that plaintiffs had not filed in the office of the clerk of the circuit court, at Valparaiso, where they transacted business under the name of the Hoosier Mercantile Company, a certificate stating the full name and residence of each partner, as is required by §12160 *et seq.* Burns 1926, §9711a Burns 1914, Acts 1909 p. 358. Issue being joined on this plea, the trial court made a special finding at the request of defendant, upon which it stated conclusions of law to the effect that one of the partners had duly filed a proper certificate in June, 1919, and that plaintiffs were not thereafter transacting business in violation of said statute when the contracts sued on were executed. The plea in abatement alleged affirmative matter which the complaint was not required to negative and defendant had the burden of proof as to such facts. *Henwood* v. *State, ex rel.* (1895), 11 Ind. App. 636, 39 N. E. 289; *Ruth* v. *Ruth* (1906), 39 Ind. App. 290, 79 N. E. 523; *Humphrey* v. *City Nat.*

*Bank* (1921), 190 Ind. 293, 307, 308, 130 N. E. 273. And silence of the finding as to a fact in issue is a finding against the party having the burden of proof to establish such fact. *National Surety Co.* v. *State* (1913), 181 Ind. 54, 67, 103 N. E. 105; *McAdams* v. *Bailey* (1907), 169 Ind. 518, 534, 82 N. E. 1057, 13 L. R. A. (N. S.) 1003, 124 Am. St. 240.

The statute says nothing about payment of a fee for filing such a certificate, and even if the act relating to fees and salaries (§7876 Burns 1926, §7324 Burns 1914, §1, Acts 1913 p. 235), cited by appellant, applies to such a case (as to which we decide nothing), it only requires that the clerks "shall tax and charge upon proper books, to be kept in their offices for that purpose, the fees and amounts provided by law." It says nothing about requiring the payment of filing fees in advance, or within any particular time, and contains no provision for annulling the legal effect of filing a paper if the fee (five cents) is not paid at any such time. The finding that "no fee was demanded by the clerk and none was paid for such filing" did not negative the fact otherwise found that a certificate was filed.

Appellant is in error in assuming that its verified plea in abatement, alleging that the statute had not been complied with by filing a proper certificate, was a plea "denying the capacity in which the parties sued" (§389 Burns 1926, §371 Burns 1914, §365 R. S. 1881), and that it imposed on plaintiffs the necessity of introducing evidence at the trial showing that a proper certificate had been filed. Lacking "legal capacity to sue" as applied to individuals suing in their own names, as the plaintiffs did in this action, has reference to some legal disability, such as infancy or idiocy, or the like. *DeBolt* v. *Carter* (1869), 31 Ind. 355, 363; *Coddington* v. *Canaday* (1901), 157 Ind. 243, 253, 61

N. E. 567; *Pittsburgh, etc., R. Co.* v. *Iddings* (1901), 28 Ind. App. 504, 510, 62 N. E. 112; *Fowler* v. *Ball, Exrs.* (1924), 82 Ind. App. 167, 141 N. E. 64. The issue joined on the plea in abatement having been decided against defendant, and that decision not being challenged, the plea was without further effect when the issues joined on the answers in bar came on for trial.

But counsel for appellant are in error when they assert that §12160 *et seq.* Burns 1926, *supra,* prohibited the partnership from executing contracts until the required certificate should have been filed. The act contains nothing whatever to that effect, but merely provides that certain persons, if conducting a business under any name other than their real names, "shall file" a certificate stating certain facts, and that a violation of the provisions of the act shall be punished by a fine. The decisions cited from states like Michigan and Washington, where statutes are in force that expressly forbid partners to enter into a contract by any other name than their own individual names, until after they shall have filed the required certificate, are not authorities in this case. *Humphrey* v. *City Nat. Bank* (1921), 190 Ind. 293, 304, 305, 130 N. E. 273. Each of the contracts purported to bind the plaintiffs to sell and deliver and defendant to purchase, for a price stated, a designated quantity of "fine granulated sugar."

Defendant filed a cross-complaint seeking to reform the contract sued on, dated May 22, 1920, by inserting a stipulation that the sugar agreed to be sold and purchased should be manufactured by and bear the brand of Federal Sugar Refining Company, which it alleged had been part of the original agreement, but had been omitted by mistake when the agreement was reduced to writing and signed. Issue being joined on this cross-complaint, the trial court heard evidence, and, on proper request, made a special finding

to the effect that there was no such agreement between the parties, that they never intended to incorporate such a stipulation in the contract, and that, as written, the contract states the agreement entered into; on which a conclusion of law was stated that defendant should take nothing by its cross-complaint, and that plaintiffs should recover their costs. The issues joined on the complaint and answer were then tried by a jury, and after the return of a verdict, a new trial was ordered. Two months after the close of the first trial, defendant moved for leave to file an additional (fourth) paragraph of answer. The motion was overruled, and that ruling is complained of. The answer thus offered and excluded alleged that there existed in and throughout the State of Indiana, at the time the contracts were entered into and for five years prior thereto, a custom and usage of the wholesale and retail grocery trade "that whenever it shall be specified in a contract for the sale and purchase of sugar  *  *  *  that delivery shall be contingent upon arrival of raw material at refinery as covered by raw sugar contracts of some specified sugar refining company therein named, it is understood and agreed by the parties that the seller shall deliver *  *  *  sugar manufactured by and bearing the brand of the sugar refining company so designated in said contract"; that therefore a stipulation in each contract sued on that delivery should be "contingent upon arrival of raw material at refinery as covered by the Federal Sugar Refining Company's raw sugar contracts" bound the plaintiffs to deliver sugar manufactured by said company, although each contract recited only the sale of and agreement to deliver a quantity of "fine granulated sugar"; and that plaintiffs had not delivered, tendered or offered to deliver sugar manufactured by that particular company. With this paragraph, defendant presented a verified motion for leave to file it

which recited that after the decision of the issue joined
on the cross-complaint and before the trial was entered
upon which resulted in the verdict that had been set
aside, defendant had moved for leave to file this para-
graph of answer, but that its motion was overruled and
leave was refused; that defendant did not know that
the alleged custom would be material until the court
refused to reform the contracts as prayed by its cross-
complaint; and that the offer to file such an answer two
months before, together with the fact that by reason of
certain alleged facts the cause could not come on for
trial until after the lapse of more than two weeks (and
really was not tried until three months had elapsed),
precluded any objection to filing the answer on the
ground of surprise. The offered answer did not state
facts constituting a cause of defense, and appellant
could not have been prejudiced by the refusal to let
him file it. The express agreement in writing by de-
fendant to purchase and pay for a quantity of "fine
granulated sugar," delivery of which was alleged in the
complaint, could not be controlled, and, in effect an-
nulled, by proving a custom and usage that only such
sugar from the factories of one particular company
could be delivered under the contract or need be paid
for by the purchaser. Proof of a custom or usage is
sometimes admissible to supply an omission or to ex-
plain an ambiguity in a contract, even where the agree-
ment has been reduced to writing. But where the
written contract is complete and certain in its terms,
the expressed intent of the parties cannot be controlled
by evidence of a usage or custom. The very object of
the parties in writing and signing a contract may be
to avoid the effect of usages and customs that would
otherwise control, and evidence cannot be allowed to
establish a usage or custom repugnant to, or which, if
given effect, would contradict, displace, control or alter

the legal effect of any of the express terms written into
the contract.   *Van Camp Packing Co.* v. *Hartman*
(1890), 126 Ind. 177, 180, 25 N. E. 901; *Scott* v. *Hart-
ley* (1890), 126 Ind. 239, 245, 25 N. E. 826; *Sohn* v.
*Jervis* (1885), 101 Ind. 578, 581, 1 N. E. 73; *High
Wheel Auto, etc., Co.* v. *Journal Co.* (1912), 50 Ind.
App. 396, 400, 98 N. E. 442; *Napier-Iron Works* v.
*Caldwell, etc., Iron Works* (1915), 60 Ind. App. 317,
322, 110 N. E. 714.   And the agreement by defendant
to purchase and pay for a quantity of "fine granulated
sugar," which plaintiffs alleged they had delivered, could
not be nullified by proof of a custom that they need not
accept and pay for any such sugar unless it was refined
at a designated factory.

Under §437 Burns 1926, §418 Burns 1914, §409 R.
S. 1881, when issues of exclusive equitable jurisdiction
are joined with issues of law in the same action
12. "the trial of both may be at the same time or at
different times, as the court may direct."   The
specification as cause for a new trial that "the court
erred in refusing to submit the defendant's cross-com-
plaint for trial and finding by the court, contemporane-
ously with the submission of the cause on the complaint"
was not well taken.   The court had the right, in its
discretion to try the equitable issue joined on the cross-
complaint seeking reformation of the contract, at a dif-
ferent time.

An objection having been offered to a question asked
by counsel for the plaintiffs and to a remark of the trial
judge, the judge said:   "I will dispose of this
13. matter.   Gentlemen of the Jury, the remarks
that counsel may make, when not giving testi-
mony from the witness stand, you may disregard.
Those remarks are made simply for the disposal of
questions here, and any remark that I have made or
that counsel may make you are not to permit to influ-

ence you in any way." Later that same day, plaintiffs called a witness and proved by him that he was an attorney representing the defendant in July, 1920. He was then asked a question to which defendant objected, when counsel for plaintiffs stated what they intended to prove. The court then inquired "What is the materiality," when counsel stated that "He (defendant's attorney) took steps to defeat this contract long before it was time to put the sugar on the track," and added that the speaker had "the evidence here in his hands." An objection to the offered evidence was sustained, but counsel also excepted to the remarks of counsel and asked that the court should instruct the jury to disregard them. The court then stated that he thought he had "admonished the jury sufficiently," and that he had "sufficiently advised the jury as to remarks of counsel," and defendant excepted. At the close of the evidence, after argument had been heard, the court gave an instruction to the effect that the jury should consider only the evidence introduced and permitted to remain, and should discard all extraneous matters, statements and suggestions, and said: "Any statements of counsel as to what they expect to prove or offer to prove, or any attempt to prove a fact, the proof of which is not admitted by the court, or which has been ordered stricken from the record, must be entirely disregarded and dismissed from your minds." In view of what the court had said to the jury shortly before and the instruction he gave afterward, we do not think defendant could have been harmed by the remark of counsel concerning the evidence which he offered to introduce that the court excluded. Therefore, we do not find it necessary to determine whether or not the remark, made in answer to a question by the court, was improper under the circumstances.

Appellant insists that the verdict is not sustained by

the evidence, but there was evidence which, if believed, fairly tended to prove performance except so far as defendant refused to accept performance, and we cannot disturb the verdict on the weight of conflicting evidence.

The extent of the cross-examination to be permitted is subject to the control of the trial court, in the exercise of a sound legal discretion, and it is not made to appear that the court abused its discretion in this case.

Refusal to permit a witness called by defendant to answer a question on direct examination was not available error where there was no offer to prove, and it does not appear what evidence would have been given in answer to the question if an answer had been permitted. *Shepard* v. *Goben* (1895), 142 Ind. 318, 319, 39 N. E. 506; *Gunder* v. *Tibbits, Admr.* (1899), 153 Ind. 591, 608, 55 N. E. 762; *Fowler* v. *Newsom* (1909), 174 Ind. 104, 112, 90 N. E. 9.

That defendant operated stores in several different cities, and had a "district manager" in charge of two of those stores in Indiana had been proved by defendant, in answer to questions asked of its witness, and, on cross-examination, he had testified, without objection, that he was then operating a retail grocery store for defendant at Little Rock, Arkansas, and that defendant was a corporation with headquarters at Memphis, Tennessee. He was then asked if defendant "runs a chain of stores over the country," and, over an objection and exception by defendant, answered that it operated some stores—that it owned some and received royalties on stores operated by individuals. We fail to perceive wherein defendant was prejudiced by the answer to this question.

It was within the discretion of the trial court to permit a witness to be cross-examined as to his relations

with the defendant company, and whether he was drawing a salary for the time spent in coming from Little Rock to attend the trial, as tending to show his interest in the result of the trial.

After defendant's business manager had testified in chief that he rejected a half carload of sugar delivered in barrels for the sole reason that the contract of June 16, 1920, under which it purported to be shipped, called for delivery in bags (plaintiff's witnesses having testified that he gave a wholly different reason at the time), it was not improper to ask him on cross-examination whether he knew at the time that defendant was under contract to take a half car of the sugar from plaintiffs, packed in barrels, in that same month. It went to the credibility of his testimony as to what reason was given at the time for rejecting the sugar delivered in barrels.

Overruling an objection to a question is not reversible error where no testimony was given in answer to it. Appellant complains of a question, the answer to which is not given in its brief. But, on looking into the transcript, we find that the witness merely said that he could not answer it by yes or no. This was not harmful to appellant.

A witness called by appellant testified that he had a conversation in his office with plaintiff's business manager, the witness thought the first of June, but it was "in 1920, either in June or July—it was the summer-time," but an objection was sustained to a question asking that he "give that conversation." The witness had nothing to do with the business of either the defendant or the plaintiffs, and they transacted no business at his office, but appellant insists that, in the conversation inquired about, certain admissions against the interest of plaintiffs were made. It is enough to say that the time when and circum-

stances under which the conversation occurred were not sufficiently proved to show that the supposed admissions by plaintiff's agent were made when acting within the scope of his authority in the transaction of plaintiffs' business. Other parts of the record indicate that, to be at all pertinent, the admissions must have been made in the last two or three days of July, and as the witness could only say that he thought it was the last of June, but it was either June or July—that it was summer-time, the pertinency was not sufficiently shown.

The only evidence that any of the sugar failed to measure up to the quality and grade of "fine granulated sugar" was the testimony of two witnesses that they saw one bag (100 pounds) "right in the doorway of the car," that had been "snagged" so that some of the sugar was spilled out, which was "off color," was "dark sugar," or "a little brown." One witness testified that a bag of "Gottschalk sugar near the door had quite a hole in it," and that he "took a sample of the Gottschalk sugar" and put it in a paper bag which he produced at the trial, and it was offered in evidence, but the court refused to admit it. The contracts called for a quantity of sugar equivalent to 601 bags, each shipment to be made with a like amount of sugar for another purchaser, being a total of about 1,200 bags. The sample taken from one bag near the car door that had been "snagged" was not shown to be a fair sample of the lot. Neither can we assume that the jurors had such expert knowledge of sugars that they could judge intelligently whether a sample of granulated sugar offered for their inspection would grade as "fine" granulated sugar, or was "off color" because too dark. The ruling complained of was not erroneous. *Trego* v. *Arave* (1911), 20 Idaho 38, 116 Pac. 119, 35 L. R. A. (N. S.) 1021; *Hagee* v. *Grossman*

(1869), 31 Ind. 223, 225; *Pacific, etc., Co.* v. *Bravinder* (1896), 14 Wash. 315, 44 Pac. 544.

The judgment is affirmed.