231 P.2d 743

**YEARSLEY et ux. v. CITY OF POCATELLO.**

**No. 7703.**

Supreme Court of Idaho.

May 15, 1951.

B. W. Davis, L. F. Racine, Jr., and M. Henrietta McGlone, all of Pocatello for respondents.

F. E. Tydeman, Ben Peterson, Pocatello, for appellant.

THOMAS, Justice

The respondents, (plaintiffs below), obtained a judgment before the court, without a jury, for $4000 against the appellant, defendant below, for damages to respondents' residence alleged to have been occasioned by water escaping negligently from a leak in the water mains of the appellant's municipally owned and operated water system which undermined the foundations and basement walls of the residence causing the walls to sag, settle and crack and the basement floor to crack.

This case was before this court on appeal once before and was reversed and remanded for a new trial. Yearsley v. City of Pocatello, 69 Idaho 500, 210 P.2d 795.

Upon the second trial of the case it was stipulated and agreed between counsel that a jury trial would be waived and the case tried anew before the district judge on the record made in the previous trial and without introduction of any further evidence and that the court at the conclusion of the trial would make its findings of fact, conclusions of law and enter judgment the same as though all the witnesses on the previous trial were called and testified exactly as they had done in the first trial. It was further stipulated and agreed that in the event the court concluded that the respondents were entitled to any damages, the amount thereof would be $4000.

On this appeal the defendant, appellant herein, has made numerous assignments of error directed at certain findings of the trial court and the conclusions of law drawn therefrom, which errors briefly are directed against the sufficiency of the evidence to support such findings; that the conclusions of law drawn therefrom are erroneous; and that the finding that the plaintiffs had filed a claim for damages with the City as required by statute is erroneous and contrary to law.

The respondents alleged that the City failed and neglected to maintain and repair and keep in repair its water system, and that because of the negligence of the City in these respects leaks had developed in its system and that such leaks saturated the ground laying against the outside basement wall of respondents' residence and had damaged such residence; the City denied any negligence in this respect or any negligence at all on its part, and affirmatively alleged that any damages occasioned to the residence of respondents was due to leaks inside of the property line of respondents; during the course of the trial the City also offered evidence, which was disputed, that any water that had gotten under the basement of respondents' residence was due to a leak in the pipes of a Mr. Lewis, adjoining neighbor of respondents.

There is no dispute in the record that the respondents suffered substantial damages to their residence, nor is there any dispute in the record that the source of such damage was water getting under the basement floor of respondents' residence;

furthermore, there is no dispute as to the amount of damages suffered nor the amount of damage the City is liable for, if it is liable in any event for damages to respondents' residence.

On November 30, 1947 for the first time, the respondents noticed that the foundation of their home was settling and the walls thereof and the basement floor therein were sagging and cracking. Respondents immediately thereafter called a contractor to look the situation over and to make a determination as to what was occasioning this condition and to also make recommendations as to what should be done to correct it.

The contractor came to the home of respondents on or near December 3, 1947, and made an inspection of the premises but at that time made no specific recommendations, nor did any work. At that time there was a large crack in the cement floor of the basement and the respondents cut a sharp pointed stick, about an inch wide and 3/8" thick, and four feet long, and poked it through the crack in the floor for a distance of three feet. When the stick was pulled out water was running off of it and mud and muck sticking to it.

The respondents also called the City Engineer's office soon after they noticed the difficulty, on a date not definitely fixed in the record but obviously some time before December 3rd, 1947. The City Engineer and two other employees of the City came to the residence of respondents pursuant to this call on December 3rd and inspected the premises and the surrounding lands but did no work nor make any suggestions, or, in fact, determine the source of such water.

Some two weeks after the contractor first came to the home of respondents he returned to the home of respondents and placed two temporary cross-beams and two sets of supporting pillars under the west portion of the house and at that time lifted the house to its approximately correct level. However, it was later, at a date not definitely fixed, necessary to lift the house some further distance, as it had in the meantime settled more.

On or near December 20, 1947 the City received another call concerning the condition existing at the residence of respondents and in that vicinity; some employees of the City, after this call, came to the property of respondents on or near December 20, 1947 and looked the situation over again; these employees testified that at this latter date they found water percolating through the surface just inside the property line of Mr. Lewis; that the sidewalk and curb had sunk; that there was a general recession of the whole ground area for a distance of eight to fifteen feet; however, at this time they were busy on other leaks and did not return to shut off the water because the crews had all gone home, they felt the damage had all been done, and they didn't want the people to be

without water, and so the matter was left as found until on or about December 23rd, 1947.

On or about December 23rd, 1947, a date which is not fixed with certainty, the City took steps to correct the trouble and prevent further damage; they dug a trench in the street and in the parking and between the curb and the sidewalk, under the sidewalk and on to the property 'of respondents and Lewis, and replaced the iron pipe in the main line to the shut-off valve and from the shut-off valve inside the property line of the respondents and Lewis for about twelve inches, with copper pipe. After this was done there was no indication of further leaks and in time the ground under the basement became completely dry.

At some time between Christmas and New Year's respondents and Mr. Lewis laid and installed new copper pipes inside their property line connecting with the line of the City, but they did not disturb the old pipes laying within their property line but left them in place in the ground.

In the meantime, between December 23rd, 1947, the date when the City apparently completed its installations, and the time when the respondents and Lewis replaced the pipe within their own property line, both parties were served by the City with water and had no further difficulties.

There is substantial conflict in the evidence as to whether the damage to respondents' property was caused by leaks from the water line of the City or the water line of Mr. Lewis; there is also conflict in the evidence as to whether or not the pipe line of Mr. Lewis leaked when it was uncovered and as to whether or not the trench dug within the property line of Lewis and respondents was dry, or damp and muddy; there is likewise conflict in the evidence as to whether or not there were any holes in the pipes of the City when they were uncovered or whether or not the hole found in one of these pipes was caused by a City employee striking it with some tool or instrument; there is also conflict in the evidence as to the condition of the trenches leading from the property line to the main line of the City; there is evidence on the part of the City to the effect that these trenches were not wet, filled with water or mucky, while the testimony of witnesses for respondents is to the effect that they were mucky and contained a great amount of water and that one of the pipes of the City had a large hole in it and was leaking when it was exposed.

There is evidence in the record that the water line of the City in this particular area, which had been in the ground some twenty-seven years, including the pipes which were serving respondents, was generally worn out and needed replacing and that this was known to the City; that the City had been for a period of some fifteen years moving towards the replacement of the old iron pipe with copper pipe, but that the pace

of this program was controlled by the finances available for that purpose except in instances where actual trouble developed and it was brought directly to the attention of the City; that the pipes belonging to the City which it removed and which served respondents and Lewis were in a bad state of repair and needed replacing.

The evidence revealed that the average life of iron pipe in the vicinity of respondents' property including the pipe which served respondents was approximately twenty years and that the pipe in the ground which did serve respondents' premises had been there approximately twenty-seven years and was badly corroded, rusted and worn.

There is evidence in the record without contradiction, that in installing the copper pipe from the property line of respondents and Lewis into their houses, the nearer the approach to each house the less dampness there was, and at no time was the ground mucky and muddy either in the trenches or on the surface.

No one on behalf of the City ever advised Lewis that there was a leak inside of his property line; he never did see water bubbling up inside of his property line and he never knew until the day of the trial that the City made any contention that there had been any leak inside of his property line; that he had seen the pipe when it was uncovered in place and that there were no leaks in the pipe and the trench was not muddy or mucky.

There is evidence in the record without substantial dispute that the damages suffered by respondents became progressively worse from the time the difficulty was first reported to the City on or near December 3rd, 1947 until the installations were replaced by the City on December 23, 1947.

On the second trial the court specifically found that the appellant had failed and neglected to properly maintain its water system in a state of repair and had negligently permitted the water pipes immediately adjacent to respondents' property to become worn and rusted causing a leak in the water pipes and doing damage to the property of the respondents; that the appellant had allowed such water pipes to deteriorate from time to time and to leak and that appellant failed to take such measures as ordinary care would dictate to guard against the deterioration and leaking of such pipes; that inspection of the water pipes at reasonable intervals would have disclosed the deterioration and the leak but that appellant failed to make such inspection or to exercise reasonable care in any inspections made and that the appellant had notice of the fact that pipes similar to the pipes immediately adjacent to the respondents' residence had deteriorated and decayed and required replacement and that such notice was sufficient to place the appellant upon notice as to the general condition of its water pipes in that area; that appellant had notice and knew that the pipes which leaked and caused the damage to respondents' property had been in the

ground for some twenty-seven years and also had notice that pipes of similar nature allowed to remain in similar soil and under like conditions were not satisfactory and had decayed and deteriorated and developed leaks; that by reason of such negligence on the part of the appellant the respondents had been damaged and that the proximate cause of such damage was the negligence of the appellant.

■ While a city is not an insurer of the condition of its water system, it is bound to use ordinary care and skill in constructing and maintaining it. Yearsley v. City of Pocatello, supra.

■ Likewise the city is bound to take notice that its pipes are liable to deteriorate from time and use and it must take such measures as ordinary care would dictate to guard against the leaking of its water system due to deterioration of the pipes used in its construction. Yearsley v. City of Pocatello, supra.

■ A city is not liable for damages occasioned by a latent defect in its water system in the absence of notice, express or implied, of such defective condition; it must have had actual notice or the defect actually existed for such a length of time or under such conditions that it should have known of the defect. Yearsley v. City of Pocatello, supra.

■ A careful examination of the evidence reveals that each finding made by the court, the trier of the facts, is based upon and supported by substantial, competent, although conflicting, evidence. This court has consistently held that findings made by the trier of the facts, supported by substantial, competent, although conflicting evidence, will not be disturbed on appeal. Sec. 13–219, Idaho Code; Holland v. Beames, 71 Idaho 343, 231 P.2d 741; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347; Hancock v. Halliday, 70 Idaho 446, 220 P.2d 384; Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345.

■ The appellant claims, as it did on the first appeal, that the respondents' claim for damages served upon appellant was not in compliance with the statute; on the first appeal, Yearsley v. City of Pocatello, 69 Idaho 500, 210 P.2d 795, this court held that respondents' claim for damages which was served upon appellant substantially complied with Section 50–162, Idaho Code, and this is and remains the law of the case. United States Building & Loan Ass'n v. France, 58 Idaho 95, 70 P.2d 374.

Judgment is affirmed. Costs to respondents.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.