372 P.2d 752

**C. C. ANDERSON STORES CO.,**
Plaintiff-Respondent,

v.

**BOISE WATER CORPORATION,**
Defendant-Appellant.

No. 8975.

Supreme Court of Idaho.

June 22, 1962.

J. F. Martin, C. Ben Martin, Boise, for appellant.

Davison, Davison & Copple, Boise, for respondent.

TAYLOR, Justice.

Approximately 1:30 a. m., June 12, 1959, a break occurred in defendant's (appellant's) ten inch water main on 9th street, between Idaho and Bannock streets, in Boise. Water from the ruptured main flowed down Idaho street, over the sidewalk, and into the store building owned and occupied by plaintiff (respondent), damaging merchandise and other property therein.

The main had been laid in 1890, about four and one-half feet beneath the surface of the street. The pipe was purchased by defendant under the trade name of Kalomine, which was composed of wrought iron

alloyed with a small amount of lead to inhibit corrosion, and was coated on the outside with asphalt. Defendant maintained 223 miles of main, of which approximately 12½ miles were of the Kalomine pipe. The trenches for the Kalomine pipe were dug in soil consisting of a mixture of gravel and silty-clay loam, and backfilled with sand.

The defendant's records indicate two prior "serious" breaks in its mains, one of which occurred in a wooden pipe and the other in a "relatively new steel pipe." The manufacturer of the Kalomine pipe guaranteed it to withstand hydrostatic pressure of five hundred pounds per square inch, and represented that the pipe was still in service in places where it had been laid for over one hundred years. The break occurred on the underside of the pipe where it had been weakened by corrosion, and consisted of a split about eighteen inches long. Asked the cause of the corrosion, defendant's engineer testified:

"I know of no scientific way you could say what caused the failure in that particular pipe, it could be a mixture of possibly manufacturing impurities, electrolytic corrosion, rust on the outside of the pipe."

Other portions of the pipe in the area of the break appeared to be in good condition. Four strips were cut from the pipe in the immediate area of the break; one from each of the bottom quarters and one each from the top quarters of the pipe. These strips were subjected to tests for tensile strength by the Gem State Testing Laboratory, from which it was determined that the portions from the upper quarters of the pipe had a tensile strength in excess of 37,000 pounds per square inch, and the pieces from the bottom quarters in excess of 30,000 pounds per square inch. Based on the tests the defendant's engineer testified that the bottom portions of the pipe tested would withstand hydrostatic pressure of 924 pounds per square inch, and the top sections 1100 pounds per square inch.

The normal pressure maintained by defendant in its mains varied from seventy to eighty pounds per square inch, and dropped below that pressure during hours of heavy withdrawal. The maximum pressure placed in the pipe immediately before the break, as recorded by an automatic pressure gauge maintained by defendant, was 78 pounds per square inch on June 2nd, 1959. The pressure was 76 pounds at the time of the break, and as a result of the break the pressure dropped to 55 pounds per square inch.

Through the telephone answering service, subscribed to by defendant, the city police notified defendant's designated employee of the break at 2:08 a. m. At approximately 2:15 a. m. such employee and

another commenced closing off the flow of the broken section. This was done by means of seven valves in the downtown grid. At, or about, 2:45 a. m. the pressure was restored, indicating the water had been cut off from the section in which the break occurred.

The foregoing indicates that defendant was not negligent in applying excessive pressure to the pipe, nor in failure to act promptly and effectively after notice of the break. Plaintiff offered no contradictory evidence and does not seriously contend that defendant was negligent in that regard.

This appeal is from a judgment entered upon a verdict in favor of the plaintiff; from order denying defendant's motion for judgment notwithstanding the verdict; and from order denying defendant's motion for a new trial.

Defendant contends the doctrine of res ipsa loquitur is not applicable and that the trial court erred in submitting the doctrine to the jury and permitting the jury to apply it in this case.

■ The essentials of the doctrine are: (1) that the agency or instrumentality causing the injury was under the control and management of the defendant (Splinter v. Nampa, 74 Idaho 1, 256 P.2d 215); (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence. Walker v. Distler, 78 Idaho 38, 296 P.2d 452.

In this case it is conceded that the pipe which ruptured and the water therein was under the control and management of the defendant. In the application of the second required element of the doctrine, consideration must be given to other established fundamental principles.

■ Cities operating in a proprietary capacity are subject to liability for damages arising out of negligence, under the same rules as are applied to private individuals or corporations. Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651; Gilbert v. Village of Bancroft, 80 Idaho 186, 327 P.2d 378; Adam Hat Stores v. Kansas City (Mo.) 316 S.W.2d 594. The authorities applicable to cities acting in a proprietary capacity are therefore applicable to the defendant in this case.

■ The defendant is not an insurer against injury to others arising out of the installation, maintenance or operation of its water system. Its liability for such injury depends upon negligence. Dunn v. Boise City, 48 Idaho 550, 283 P. 606; Yearsley v. City of Pocatello, 69 Idaho 500, 210 P.2d 795; 71 Idaho 347, 231 P.2d 743; Vitucci Importing Co. v. City of Seattle, 72 Wash. 192, 130 P. 109; Montgomery

Ward & Co. v. Lamberson (9th Cir.) 144 F. 2d 97. The burden of establishing such negligence rests upon the plaintiff. Vitucci Importing Co. v. City of Seattle, supra; Midwest Oil Co. v. City of Aberdeen, 69. S.D. 343, 10 N.W.2d 701; Union Pac. R. Co. v. Stanger (9th Cir.) 132 F.2d 982; Montgomery Ward & Co. v. Lamberson, supra; Bedal v. Hallack and Howard Lumber Company (9th Cir., Idaho) 226 F. 2d 526. The application of the doctrine of res ipsa loquitur does not shift the burden of proof to the defendant. It merely shifts to the defendant the obligation to produce evidence to explain or rebut the inference of negligence raised by the application of the doctrine. Union Pac. R. Co. v. Stanger, supra.

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, at 819.

"Wherever the burden rests, he who undertakes to carry it must do more than create a doubt which the trier of fact is unable to resolve. * * * This is but a particular application of the doctrine of res ipsa loquitur, which similarly is an aid to the plaintiff in sustaining the burden of proving breach of the duty of due care but does not avoid the requirement that upon the whole case he must prove the breach by the preponderance of evidence." Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89, at 97.

See also Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468.

Plaintiff contends the defendant was bound to take notice that its mains would deteriorate from time and use, and was required to take such measures as ordinary care would dictate, to guard against rupture therein, citing Dunn v. Boise City, 48 Idaho 550, 283 P. 606. That case involved damage caused by the rupture of timbers used in the construction of a wooden flume. The court there said:

"The city was not an insurer of the condition of its drainage system, but

was bound to use ordinary care and skill in constructing and maintaining it. It was likewise bound to take notice of the liability of the timbers to decay from time or use, and to take such measures as ordinary care would dictate to guard against the breaking of the flume across the Boise Water Company's canal because of the decay of timbers used in its construction. (Citations)

\* \* \* \* \* \*

"The rule that the city, in the absence of notice, express or implied, is not liable for damages accruing by reason of a latent defect, announced by this court when considering the 'sidewalk' cases cited by appellant (Citations), has no application here \* \* \*." 48 Idaho at 555, 283 P. at 608.

The Dunn case was followed in Yearsley v. Pocatello, 69 Idaho 500, 210 P.2d 795, in which it was said that the city was bound to take notice that pipes in its water system were liable to deteriorate from time and use, and must take such measures as ordinary care would dictate to guard against leakage resulting from such deterioration. However, it was, nevertheless, held in the Yearsley case:

"Third, that the city is not liable for damages occasioned by a latent defect in the absence of notice, express or implied, of such defective condition, i. e., the municipality must have had actual notice or the defect actually existed for such a length of time, or under such circumstances that it should have known thereof." 69 Idaho at 503, 210 P.2d at 796.

The same rules were again announced on the second appeal in the Yearsley case, 71 Idaho 347, 231 P.2d 743.

The conclusion to be drawn from defendant's evidence as to the cause of the rupture is that there could have been a defect in the manufacture of the pipe, or some of the asphalt coating could have been rubbed, knocked off, or damaged in the shipping, handling, or installation of it, which reasonable inspection at the time of installation would have revealed; and that such defective condition permitted corrosion to weaken the pipe to the extent that it ruptured. The inference of negligence, which the doctrine of res ipsa loquitur permits to be drawn from the circumstances, is a reasonable one and is justified in this case. O'Connor v. Black, 80 Idaho 96, 326 P.2d 376; Kind v. City of Seattle, 50 Wash. 2d 485, 312 P.2d 811; Stevens-Salt Lake City, Inc. v. Wong, 123 Utah 309, 259 P. 2d 586; Esberg-Gunst Cigar Co. v. City of Portland, 34 Or. 282, 55 P. 961, 43 L.R.A. 435; Adam Hat Stores, Inc., v. Kansas City (Mo.) 316 S.W.2d 594; Bridgeman-Russell Co. v. City of Duluth, 158 Minn.

509, 197 N.W. 971, 972. We have considered the following cases which would support or tend to support a contrary conclusion: Martin v. Brown, 56 Idaho 379, 54 P.2d 1157; Goldman v. City of Boston, 274 Mass. 329, 174 N.E. 686; Grace & Co. v. City of Los Angeles (9th Cir.) 278 F.2d 771.

The conclusion we reach in this case is also in harmony with the duty imposed by statute upon a public utility. I.C. §§ 61–302, 61–702.

The only requirement as to notice is such as is compatible with the application of the doctrine, namely, defendant is bound to take notice that its mains will deteriorate from time and use. To the extent that the Yearsley cases go beyond this in regard to notice, they are hereby modified to conform herewith.

■ At the time of the flooding, plaintiff had in storage in the basement of its building a certain quantity of merchandise listed in plaintiff's exhibit 3 and invoices attached thereto. This merchandise was stored in the original packages or pasteboard cartons. It consisted principally of such items as stools, tables, bookcases, rotary lawn mowers, roll-away coasters, gym sets. The total cost of this merchandise was $1994.98. The plaintiff's comptroller, who was qualified in that regard, testified that such cost was also the reasonable market value of that merchandise immediately prior to the damage. He also testified that its reasonable market value after the damage was $950.00. However, only a few of the containers were opened and the contents examined. The testimony was admitted over defendant's objection that the witness was not qualified. All of the containers were water-soaked and the remaining cartons were substantially in the same condition as those which had been opened. Plaintiff's witness, Paul Owen, the owner and operator of an auction business in Boise, testified that he was shown the damaged merchandise; that he made a bid of $922.70 for all of it; and in his opinion that was its reasonable marketable value. No objection was made to this testimony. However, Mr. Owen examined only those items, the containers of which had been opened. As to the others, he observed only the condition of the containers. Defendant contends this evidence is incompetent, and insufficient to establish damage to the merchandise.

"The measure of damages for an injury to personal property which has not been entirely destroyed is the difference between its value at the place immediately before and immediately after the injury, or, if such sum be less, the reasonable cost of repairs to restore the property to its previous condition." 25 C.J.S. Damages § 83b, p. 597.

There was no evidence as to the cost of repairing or restoring this merchandise to its previous condition. The evidence in that regard was that it could not be sold as new merchandise, and that plaintiff was not in the business, and did not have the facilities for the sale of damaged merchandise. This new merchandise was not such that it could be restored to its original condition and value by renovation or repair, and in the event such restoration had been attempted it nevertheless would not be restored to its original value and necessarily would have to be sold as damaged merchandise. In such case the measure of damages is the difference between its reasonable market value, at the place, immediately before, and immediately after, the injury. Thompson v. First Security Bank of Idaho, N.A., 82 Idaho 259, 352 P.2d 243; Sugai v. General Motors Corp. (Idaho Dist. U.S.D.C.) 137 F.Supp. 696; Merchant Shippers Ass'n v. Kellogg Exp. & Draying Co., 28 Cal.2d 594, 170 P.2d 923; Angerman Co., Inc. v. Edgemon, 76 Utah 394, 290 P. 169, 79 A.L.R. 40; Longbotham v. Takeoka, 115 Or. 608, 239 P. 105, 43 A.L.R. 1285; Broadie v. Randall, 114 Kan. 92, 216 P. 1103, 32 A.L.R. 708; Montgomery Ward & Co. v. Lamberson (9th Cir.) 144 F.2d 97.

■■ A witness who testifies as to value must first be qualified. Here the value of the property prior to the damage was established. However, neither the comptroller nor Mr. Owen was qualified to testify as to its reasonable market value in its damaged condition. They did not examine the bulk of the merchandise which was enclosed in the unopened cartons. The items that were exposed and examined were not shown to be in the same condition or representative of the entire lot. Village of Lapwai v. Alligier, 69 Idaho 397, 207 P.2d 1025; Trego v. Arave, 20 Idaho 38, 116 P. 119, 35 L.R.A.,N.S., 1021; Piggly-Wiggly Stores v. Lowenstein, 197 Ind. 62, 147 N.E. 771. The testimony of these witnesses as to the market value of the property after the injury was nothing more than a speculative estimate, and under the circumstances, accurate evidence being available, the proof is insufficient to provide a basis for determining the damage to this particular lot of merchandise.

■ However, there is competent and substantial evidence that plaintiff suffered more than $5000 damage to its building and contents, exclusive of the merchandise above referred to. The jury's verdict and the judgment entered thereon providing for a recovery by plaintiff of $2878.22 damage is amply supported and will not be disturbed. Levene v. City of Salem, 191 Or. 182, 229 P.2d 255.

■ Plaintiff's evidence of such damage is not materially controverted or challenged by the defendant. Defendant re-

lied upon absence of proof of negligence on its part, contributory negligence of the plaintiff, and intervening negligence of third parties. As to these defenses, the evidence was conflicting. The issues were properly presented to the jury by the instructions and, being supported by competent and substantial evidence, the verdict thereon is conclusive.

The defendant assigns as error the refusal of the court to require the jury to answer three interrogatories submitted by defendant. The issues to which the interrogatories were directed were fully covered by the court's instructions. The giving or refusing of the interrogatories was discretional and we find no error in the court's refusal to submit them in this case. Peterson v. Hailey Nat. Bank, 51 Idaho 427, 6 P.2d 145; Tsuboi v. Cohn, 40 Idaho 102, 231 P. 708, 39 A.L.R. 851; Watkins v. Mountain Home Co-operative Irr., Co., 33 Idaho 623, 197 P. 247; De Lamater v. Little, 32 Idaho 358, 182 P. 853; Fodey v. Northern Pac. Ry. Co., 21 Idaho 713, 123 P. 835; Giffen v. City of Lewiston, 6 Idaho 231, 55 P. 545; I.R.C.P. Rule 49; 2B Barron & Holtzoff-Federal Practice and Procedure, § 1054.

Defendant assigns as error the refusal of two of its requests for instruction, and the modification by the court of five of its requests which the court gave. We have examined these requests, and the instructions given. To the extent that the requests were correct, the issues involved therein were fairly covered by instructions given. We find no prejudicial or reversible error.

Judgment affirmed.

Costs to respondent.

KNUDSON, McQUADE and McFADDEN, JJ., and OLIVER, D. J., concur.