ANGERMAN CO., Inc. v. EDGEMON et ux.

No. 4894.   Decided July 21, 1930.   (290 P. 169.)

*Thomas & Dahlquist,* of Salt Lake City, for appellants.

*Hedrick & Shobert,* of Salt Lake City, for respondent.

DILWORTH WOOLLEY, District Judge.

This is an action to recover damages for injury to personal property on the alleged ground of negligence.

The evidence showed that the plaintiff conducted a shop, in which was kept a stock of ladies' wearing apparel in a room on the ground floor of a certain building in Salt Lake City. The defendants conducted a hotel in rooms on the second and third floors of the same building. Both parties to the action were tenants of the same landlord. Directly over the plaintiff's shop, on both floors, were bathrooms and toilets used in connection with the hotel, in which were bathtubs, toilets, lavatories, and the plumbing fixtures usually found in such places, supplied with water under pressure in pipes. Under the terms of their lease the defendants covenanted with their landlord to make and be responsible for the repairs of the plumbing and water pipes, fixtures, and appliances, and the upkeep of the same. It was also shown that water in some manner escaped from the pipes or fixtures in the bathroom or toilet on the third floor, found its way downward through the intervening floors and ceilings, and fell upon the goods, racks, showcases, and rugs in the shop, causing considerable damage to the merchandise.

One of the plaintiff's witnesses testified that on Sunday evening, about 9 o'clock, upon entering the shop, he noticed the floor was wet; that in tracing down the water, he found it leaking from a beam in the ceiling and that it had spread over three racks in which the dresses were all wet; that he immediately went upstairs and met Mrs. Edgemon, one of the defendants, who told him she was not aware of any leakage at that time; that he went upstairs the next morning, with his attorney, inquired where the leak had been, and Mrs. Edgemon showed them the bathroom or toilet on the second floor; that the walls were water-soaked all the way down and the ceiling in the lavatory had fallen; that they went up to the third floor and found the floor in the lavatory was wet but the ceiling and the walls dry; that Mrs. Edgemon told them she discovered the water on the floor for the first time when she heard the ceiling fall in the morning, and a maid or some one who was cleaning up told her there was water on the floor.

The evidence does not show just how or why the water escaped from the pipes or fixtures. If the defendants knew what caused the trouble, they failed to disclose their knowledge at the trial. They brought forward evidence to show that the plumbing fixtures were inspected and the toilets were flushed on the morning of the accident and at that time they worked all right; that the floats on the toilets were equipped with a string so attached to the cover as to prevent the float dropping down too far and interfering with rubber ball which drops into the outlet to the water-closet; that this string attachment was placed thereupon by the defendants as an extra precaution against the toilets leaking or overflowing, as they had had considerable trouble with leaking toilets.

The trial was to the court sitting without a jury, judgment for the plaintiff, and the defendants appeal.

The findings of negligence upon which the judgment rests are as follows:

"6. That between on or about the evening of Saturday, the 25th day of December, 1926, and the night of Sunday, the 26th day of December, 1926, the defendants wrongfully kept in operation and use and wrongfully permitted and allowed the operation and use of the said bath room and toilet, and the tub, lavatories and water closets located therein, and operated and used the same and permitted the use of the same in so careless, improper and negligent a manner, and so failed to use proper or any care in the operation and use of same that the water from one of the said fixtures or appliances in said rooms escaped and overflowed under high hydraulic pressure, and the water therein was negligently allowed by the defendants to flow under high pressure continuously and for a long period of time out of said appliance or fixture and downward into and upon the floors and ceilings below.

"7. That * * * the defendants negligently and carelessly failed to keep one of said fixtures or appliances in said water system in such condition as to make it reasonably fit and safe for use by defendants and their said hotel employees or guests without injury or damage to others; and that defendants at said times negligently and carelessly disregarded their duty to keep the said premises and water system appliances or fixtures therein in such condition as to prevent injury or damage to other tenants of the same building; and that the defendants, at said times, negligently and carelessly allowed and suffered the water in said appliance or fixture in said water system confined therein under high pressure, to flow therefrom continuously, and to thereafter flow out of and over and under the floors, walls, and ceilings below; and that thereby a large quantity of water was negligently and carelessly allowed, permitted and suffered by the defendants to escape, and did escape; from said fixture; or appliance of said water system; and that, by reason thereof, said water descended in large quantities for a long period of time, and fell downward into the bath room and toilet or the second floor, directly below the bath room on the third floor and gathered on the floor of the same to a depth of approximately two inches, and fell downward into, upon and over the rooms below, and over, upon, into and under the ceilings, walls and floor of the plaintiff's said store * * * and partially destroyed said dresses, 116 in number, * * * to the damage of the plaintiff in the sum of $850.00."

The appellants, under proper assignments of error, urge three grounds upon which they rely for a reversal of the judgment, namely: (1) That the plaintiff failed to prove that defendants were negligent in any respect alleged in

the complaint or at all; and that the doctrine or res ipsa loquitur, which the trial court applied to the case, does not apply, for two reasons: First, because the possession and control of the water and plumbing fixtures were not exclusively in the defendants, inasmuch as they were conducting a public inn to which the public had access at all times; and, second, because the plaintiff pleaded specifically several acts or omissions of negligence and failed to prove any of them, contending that when a plaintiff sets out specifically certain acts of negligence as the cause of the injury he must recover, if at all, upon the negligence charged and cannot invoke the doctrine of res ipsa loquitur to aid his case. (2) That, even assuming that the doctrine of res ipsa loquitur does apply, still the judgment should have been for the defendants because the inference of negligence warranted by that doctrine was fully overcome by the evidence of the defendants. And (3) that there is no competent evidence to support the finding of damages.

In the case of *Zoccolillo* v. *Oregon Short Line R. Co.*, 53 Utah 39, 177 P. 201, 210, this court expounds the doctrine of res ipsa loquitur and refers to the previous cases in this court where the subject has been discussed. The rule which is quoted with approval in that case, taken from the case of *Sweeney* v. *Erving*, 228 U. S. 240, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905, is as follows:

"When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of explanation, that the injury arose from the defendant's want of care."

It is further made to appear in that case that "the effect of the maxim is evidentiary, and that where it applies negligence, which is the ultimate fact to be established, may be inferred from a particular occurrence or accident." In some cases the inference may be so strong, where no explanation

is offered, as not only to justify, but to compel, a finding of negligence; but ordinarily all that is meant by the maxim is that proof of the facts embraced within the statement of the rule affords reasonable evidence from which the jury, or the court, if the case be tried without a jury, may, in the absence of explanation by the defendant, infer that the injury arose from the defendant's want of care.

In the case at bar the plaintiff proved an injury which, we think, is such as, in the ordinary course of things, does not happen if the person having control of the water under pressure in pipes and plumbing fixtures, in the upper stories of a building, uses proper care; it proved that the water and plumbing fixtures were under the exclusive control of the defendants, and the defendants offered no explanation as to how the water came to escape or as to why it was permitted to flow for such a length of time and in such volume as to find it way down through two floors and ceilings and upon the goods in the plaintiff's store. From these facts and circumstances we think the court had the right to find, as it did find, that the injury was due to the negligence of the defendants. The accident speaks for itself.

The fact that the defendants were conducting an inn and that their guests or even members of the public made use of the bath rooms and toilets therein cannot be held to exonerate the defendants and affords no reason why the doctrine of res ipsa loquitur should not be applied to the case; because the water in those rooms and the plumbing fixtures therein were nevertheless in the exclusive control of the defendants. It was not shown, or attempted to be shown, that any one else had any control of them. The defendants in their lease with their landlord assumed responsibility for them. It was the plain duty of the defendants to take all reasonable precautions in the use by themselves, their servants, guests, and invitees of the toilet facilities in their hotel so that the water which they brought upon the

premises should not be permitted to escape and cause injury to the property of the occupants of the lower rooms of the building. Their duty in this regard was no less by reason of the fact that they permitted members of the public to make use of those facilities than it would have been if they had restricted the use to their guests and servants. Suppose, as has been suggested, that some one for whose act the defendants were not liable, some member of the public, through his carelessness may have caused the toilet on the third floor to overflow; it was still the duty of the defendants to use due care to discover the trouble and to stop the overflow and to prevent the water from causing injury to the plaintiff's goods. Whether they used due care or not in this respect was a question of fact for the trial court to find from all the facts and circumstances shown in evidence in the case. The trial court having found that defendants did not use due care in this respect, that is, that they were negligent, and such finding being based upon sufficient evidence, this court is powerless to interfere with it even if it were disposed to do so.

The appellants also contend that the doctrine of res ipsa loquitur cannot be invoked to aid the respondent's case because it pleaded several specific acts and omissions of negligence and failed to prove any of them, it being argued that the rule is that when a plaintiff specifically sets out items of negligence he must recover, if at all, upon the negligence charged and cannot invoke the doctrine of res ipsa loquitur to aid his case. This is no doubt the rule in some jurisdictions. *Thompson* v. *St. Louis-San Francisco R. Co.* (Mo. App.) 274 S. W. 531; *Pate* v. *Dumbauld,* 298 Mo. 435, 250 S. W. 49; *West* v. *Hollady* (Mo. App.) 196 S. W. 403; *The Great Northern* (C. C. A.) 251 F. 826; *White* v. *Chicago G. W. R. Co.* (C. C. A.) 246 F. 427. But it is not the rule in this state. In *Dearden* v. *San Pedro, L. A. & S. L. R. Co.,* 33 Utah 147, 93 P. 271, 273, plaintiff, a passenger on defendant's train, brought action for damages for injuries sustained when a car on which he was riding collided with

a water car. Defendant, on appeal from the judgment, urged that since plaintiff made specific allegations of negligence with respect to a particular defective and unsuitable brake and brake chain, he was required to prove such facts specifically as alleged by some direct evidence, independent of and in addition to any presumption arising from the application of the maxim. This court, however, held that the complaint in that case contained some allegations of negligence other than the specific allegations relating to the brake chain; in other words, that general negligence, as well as specific negligence, was alleged. We also have such allegations in this case. In that case, in passing upon the question involved here, the court says:

"When it is shown that a person has sustained an injury under circumstances where the maxim referred to applies, he is not required in the first instance to prove any particular defect by evidence other than by the prima facie presumption, although the facts with respect to some defect are unnecessarily alleged with particularity in the complaint. * * * Because the plaintiff alleged and attempted to prove more than he was required to do did not displace the presumption of negligence as an element in his case nor change the rule of evidence with respect to the burden of proof. * * * The essential and ultimate fact alleged in the complaint and in dispute was the negligence of the defendant in causing the collision. * * * That the plaintiff averred and undertook to show a defective brake chain as evidence of negligence causing the collision, did not waive nor affect the presumption of negligence arising from the circumstances which was in itself sufficient to show such negligence."

See also *Cunningham* v. *Union Pacific Ry. Co.*, 4 Utah 206, 7 P. 795, 799, where the Territorial Supreme Court, at page 214 of the official report, says:

"Besides, under a general allegation of negligence, the circumstances constituting it may be proved, even though other circumstances particularly specified in the complaint are unproved. Abb. Tr. Ev. 583; *Edgerton* v. *New York H. R. Co.*, 39 N. Y. 227."

The rule in this jurisdiction, therefore, appears to be squarely against the appellants' contention upon this branch of the case.

It is next contended that the judgment should have been for the defendants because they overcame the inference of negligence which might have been drawn in behalf of the plaintiff, assuming that it is a proper case for the application of the doctrine of res ipsa loquitur. It should be remembered in this connection that the defendant did not undertake to show how this accident happened. Mr. Edgemon testified: "I have never yet been able to tell where that water came from." They did not show that the damage to the plaintiff's goods was caused by some agency beyond the control of the defendants or by the act of some person for whose conduct they were not liable. They did show, however, that the toilets and plumbing fixtures on the two floors of the hotel were inspected on the morning of the accident and that they were working all right; that the strings above mentioned had been attached to the floats in the toilets to prevent trouble; and that on the afternoon of the day of the accident they again inspected the toilets and did not find any trouble with them.

This court would not be justified in holding as a matter of law that such a showing is sufficient to constitute a defense to plaintiff's case, even if the trial court believed all of their evidence, which it may not have done. Giving the defendants the full benefit of the testimony of their witnesses as to the care which was exercised to prevent the escape of water from the fixtures in the bathrooms and toilets of the hotel, it still amounts to nothing more than some evidence tending to show that they were not negligent. The situation is just this: After the plaintiff had produced evidence to show the facts stated in the outset of this opinion, and which are not really in dispute, the trial court had the right to find from those facts that the injury was caused by the negligence of the defendants; the defendants then went forward and produced some evidence which, if believed, tended to show that they were not negligent, but that they took all proper precautions to avoid an acident such as hap-

pened. But the question still remained: Were the defendants negligent? This was a question of fact, to be determined by the jury from all the evidence in the case, if the case had been tried before a jury, or by the trial court. In this case the trial court found the fact in favor of the plaintiff. This court cannot interfere with that finding, except by holding either that the plaintiff's evidence was insufficient as a matter of law to warrant the conclusion that they were negligent, or that the defendants' evidence was sufficient as a matter of law to compel the conclusion that they were not negligent. This we do not feel justified in doing, because the evidence is such upon the issue of negligence that reasonable minds might well draw opposite inferences from it. *Van Wagoner* v. *Whitmore,* 58 Utah 418, 199 P. 670; *Peek* v. *Bailey,* 57 Utah 546, 195 P. 206; *Stilphen* v. *Elliott,* 53 Utah 579, 173 P. 700.

The last proposition laid down by appellants in their brief is that there is no competent evidence in the record that any damage was sustained by the plaintiff. They say that the rule for the measure of damages is laid down in 17 C. J. 877, as follows:

"The measure of damages for injury to personal property which has not been entirely destroyed is the difference between its value at the place immediately before and immediately after the injury."

They then assert that there is no evidence in the record as to the value of the merchandise either before or after the injury.

They give the correct rule, but their assertion is not borne out by the record. The plaintiff produced its manager, Mr. Langdon, who testified in substance, upon this point, as follows: There were 116 dresses in the racks over which the water flowed. He made a record of the actual items that were damaged. There were 116 dresses pretty badly damaged. He knew the market value of the goods in the store. He had been connected with chain stores dealing in ladies'

wearing apparel 5½ years, during which time he had had exclusive control of the sales and the marketing of merchandise, and had kept himself posted with the prevailing market on women's wearing apparel. He did the ordering to a certain extent. It was entirely up to him to say what the retail price is to be. The home office sends out the goods at cost price, what it cost to buy the goods from the manufacturers. He marked the price at which they were to be sold on the goods; and in arriving at that price he took into consideration the style, quality, and color of the goods and the conditions of the market with respect to competition. He marked on the list (Exhibit B) the retail price of the damaged dresses. The market value of the first dress shown on the list is $25; the second, a silk dress, had a market value of $16.50. The retail or market price of the 116 dresses was $2,761. The original cost was $1,728. They sold those 116 dresses, after advertising them at a sale for $1,172.50. It cost 28 per cent of the merchandise sold in order to do business, or $328.30 to sell the 116 dress. They might have been able to sell the dresses for more if they had been dry cleaned, but they did not care to sell them in that way. Another witness was produced who testified that the dresses were all wet in three cases and they had faded one onto the other; that it was very hard to sell these dresses because they were so faded; that a lot of them had to have pieces taken out and pieces put in them, a sleeve would have to be taken out or a new border put on a skirt where it was faded; that some of the dresses had to be practically made over; that they would not have been readily salable if they had been dry cleaned.

The court found that the market value of the goods immediately prior to the injury was $1,728, and that the market value had been depreciated in the sum of $850, which is the amount of damages allowed. We think the evidence amply supports this finding.

There are other errors assigned, which are not embraced within the propositions above discussed, but, as they are not

argued in the brief and were not argued at the hearing, they are regarded as waived.

Judgment affirmed. Costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified did not participate herein.