CURBY v. BENNETT GLASS & PAINT CO.

No. 6159.   Decided June 21, 1940.   (103 P. 2d 657.)

*Irvine, Skeen, Thurman & Miner* and *M. C. Faux*, all of Salt Lake City, for appellant.

*Claude T. Barnes*, of Salt Lake City, for respondent.

PRATT, Justice.

During the course of the trial in the lower court counsel for Harry Curby, respondent, made this statement:

"* * * but we take the position of res ipsa loquitur now in this case * * *."

His theory of trying the case was substantiated by the fact that he rested after the following salient facts were proved as a basis for his cause of action, exclusive of those proved in support of the element of damages:

Harry Curby, while walking north on Main Street in Salt Lake City, Utah, on the west side of that street, was struck in the right eye with particles of glass. He had arrived at a point some 6 to 8 feet south of the south end of a pane of glass being trimmed by employees of the Bennett Glass and Paint Company. The pane of glass was some 4 to 5½ feet high, some 8 feet long and about 1/8th of an inch thick. It stood on the sidewalk parallel to the front of the building, some 3 feet therefrom. At its north end, the end farthest from Curby as he approached—one employee stood facing toward Curby, holding the glass. About 3 feet north of the south end of the glass, the other employee stood with his back toward Curby, the glass top edge under his left arm, clipping about 1½ inches of the top edge with a pair of clippers. This man was about 9 to 11 feet away from Curby when the latter was hit in the eye. The area around the glass was not roped off; and there was no shield or cover used against possible flying glass (the absence of these alleged protective measures was the grounds of negligence alleged). Main Street is the main business thoroughfare of Salt Lake City. The time was approximately 9:45 A. M. on a week day, October 7, 1937. There was little

or no wind blowing. These facts have been taken from the testimony of Curby and his witnesses offered prior to his resting of the case.

The defense consisted mainly of testimony to prove that glass does not fly when clipped; that it was not the custom to use shields under such circumstances (the matter of custom was ruled out by the lower court) ; and that Curby did not suffer an eye injury as a result of these alleged circumstances (the attempted proof on this subject became the subject of the controversy between the parties as to the admissibility of alleged privileged communications to a doctor).

Two quotations from 20 R. C. L. are rather appropriate to an understanding of this case. They are:

"* * * More precisely the doctrine res ipsa loquitur asserts that whenever a thing which produced an injury is shown to have been, under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care * * *." 20 R. C. L. 187.

"* * * And a careful analysis of the better considered decisions shows that negligence will not be presumed from the mere fact of injury, when that fact is as consistent with a presumption that it was unavoidable as it is with negligence; and therefore, if it be left in doubt what the cause of the accident was, or if it may as well be attributable to the act of God or unknown causes as to negligence, there is no such presumption * * *." 20 R. C. L. p. 185.

See also *Kapros* v. *Pierce Oil Corporation*, 324 Mo. 992 (headnote 1), 25 S. W. 2d 777, 78 A. L. R. 722, plus annotation.

It is apparent that the presumption cannot be a doubtful one.

Is it common knowledge that glass flys when clipped? If the answer is in the affirmative, then there is justification for applying the principle of res ipsa loquitur in this case. An analysis by comparison is sometimes rather effective. In the case of falling objects we find many instances of the application of this presumption known as res ipsa loquitur.

It is common knowledge that objects with weight will fall if unsupported. It requires no expert to prove that to us. If the suspension of that object depends upon the control of an individual, it will remain suspended ▇ as long as he exercises proper control over it. Thus we say that under ordinary circumstances if that object falls and injures someone it is sufficient proof of carelessness on part of the one in control to justify his coming forward and explaining the cause. We know that when an object falls, gravity continues it in its downward movement until intercepted by some other force, object, or by the earth's surface. Distance is of no materiality once it is started on its downward course. These are simple truths known to all.

But what about flying clipped glass—if it does fly—if it is common knowledge that it flys? How far does it fly? In this case, gravity retards its movement rather than aids it. It is not like the falling object—it does ▇▇ not continue its horizontal course indefinitely. As to that course, distance is very material. Plaintiff in this case was some 10 feet distant from the clipper when struck. Suppose he had been 50 feet away? Suppose a mile? Does res ipsa loquitur apply in all such cases? The importance of the element of horizontal distance in considering the trajectory of flying glass deprives us of the right to infer merely from glass clipping and an injury that the injury was caused by negligence in the conduct of the clipping.

To those of who would say it is common knowledge that glass flys when clipped, may the rest of us not ask: Are you really giving what is common knowledge—knowledge

acquired from prior common experiences, or are you reasoning it out thus: Glass is brittle, therefore it must fly when clipped? Chalk is brittle too—many things are brittle; but whether or not they fly when clipped depends upon their resistance to force, the amount of force, and the direction of its application. To say that glass flys when it is clipped is an assumption of facts not within common knowledge, but within the knowledge of those experienced in a certain line of work. Brittle objects may be so finely pulverized in clipping that the slightest breeze will pick them up, whether they have come to rest or not, and carry them. Such flight is not induced by the clipping—and is not the basis of the present action. If this judgment can not be supported upon the principle of res ipsa loquitur, and we are of the opinion it can not, it must fall. There was a failure of proof by respondent of any duty on the part of appellant to provide the alleged necessary protective measures against injury to passersby. The lower court should have so instructed—as requested by appellant. This failure was not obviated by the doctrine of res ipsa loquitur under the facts of this case, for the reasons we have set out above.

As this disposes of this case, it is unnecessary to discuss the other alleged errors. The judgment of the lower court is set aside, and the case remanded with directions to the lower court to enter a judgment in favor of defendant of no cause of action. Costs to appellant.

MOFFAT, C. J., and LARSON, J., concur.

HOYT, District Judge.

I dissent. I think the trial court did not err in refusing to instruct the jury that there was, in law, no evidence to show that defendant was negligent. The testimony of defendant's witnesses was that the glass which was being trimmed was six feet high and one-fourth of an inch thick and stood upright on blocks on the sidewalk. Defendant's employee was snipping off a strip one-fourth to three-

eighths of an inch wide along the top edge of the glass. The snipping was being done with a pair of pincers which, as shown by the testimony, caused some of the glass to be broken and crushed into fine splinters and particles so fine as to be hardly visible to the unaided eye-sight. The work was being done during the business hours of the day upon the sidewalk of one of the busiest blocks of Salt Lake City's Main Street. I think the court cannot say as a matter of law that carrying on such an operation at such a place and time, without roping off the area or maintaining a covering over the work, is not negligence, even though there was no proof to show that it is customary for glaziers in such cases to rope off the area or maintain a covering over the work.

"The custom of others engaged in the same pursuit, though generally admissible in evidence by either party as tending to show negligence or the contrary, is not conclusive. 'What usually is done, may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.'" Shearman & Redfield on Negligence (6th Ed.) Sec. 12-a.

I think common experience tells us that to pry upon the edge of a substance so exceedingly hard and brittle as plate glass can cause splinters to be thrown some little distance. And even if the opinion of the defendant's witnesses was correct that the splinters and fine particles of glass ordinarily drop straight down, that does not, in my opinion, free defendant from the charge of negligence. If plaintiff got particles of glass in his eye from the operation being performed by defendant's workmen—and I think it clear that there was competent evidence to support such a finding— then the glass must have been projected by the force exerted on the pincers or it must have ben carried by the wind from the place of snipping. In either case the defendant should have foreseen the danger to pedestrians passing on the sidewalk where the snipping was being done at a height six feet two inches above the sidewalk. It is certainly common for wind to be blowing along Salt Lake City's Main

Street with force enough to carry fine particles of glass, and since defendant's workmen admitted that the operation of trimming with pincers results in fine particles of glass dropping from the point of trimming, they should have foreseen the possibility of such particles being blown into the faces of passing pedestrians. Besides this, a demonstration of trimming plate glass with pincers was conducted in the presence of the jury by defendant's witnesses. That demonstration alone might easily have constituted evidence to the jury that such an operation carried on upon the sidewalk under the circumstances shown by the evidence created a danger to passing pedestrians which was foreseeable by a person of ordinary prudence. It is certainly a matter of common knowledge that fine particles of glass can cause injury to a person's eye. The jury obviously believed the plaintiff's testimony that particles of glass entered his eye while he was approaching the place where the glass trimming operation was being conducted. Having accepted that testimony as true, the jury, I think, was entitled to say whether the snipping of glass with pincers, in such a place, without any covering over the work, was negligence.

I do not think it was necessary for the plaintiff to rely upon the doctrine of res ipsa loquitur. The circumstances, in my view, constituted affirmative evidence of negligence on the part of defendant's workmen. If that is denied, however, I think the res ipsa loquitur rule should be applied, and that it furnishes adequate support for the verdict of the jury:

"Where the thing which caused the injury complained of is shown to be under the management of the defendant or his servants, and the accident is such that in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care."

Assuming that the jury found that plaintiff got glass in his eye from the snipping operations, then the human force

which initiated the course of events resulting in plaintiff's injury was in the exclusive control of defendant's servants. The accident of getting particles of glass in one's eye at such a place is such as in the ordinary course of things does not happen. It therefore put upon the defendant the duty of explanation. The explanation offered by defendant is not of some unforeseeable intervening cause carrying particles of glass into plaintiff's eye, but is merely: We admit that trimming the glass wtih pincers caused fine particles and splinters of glass to be discharged from the point of operation, but our experience is that such particles ordinarily drop down to the ground, and if in this instance some of the particles got into plaintiff's eye, we are not responsible, for we have never known of such a thing to happen before. To me, that is not a satisfactory explanation, and if resort to the rule of res ipsa loquitur is needed, then we should apply it. Nor do I think that the state of the pleadings prevents application of the doctrine. See 45 C. J. 1226, note 88-92, and *Mintzer* v. *Wilson*, 21 Cal. App. 85, 68 P. 2d 370, Syllabus 11.

The rule, res ipsa loquitur, has usually been applied in the case of falling objects. If the falling object which causes injury is a tiny splinter of glass instead of a brick or cask, I do not think that prevents the application of the doctrine. And if the splinter of glass is deflected a few feet from its downward fall by an ordinary wind, I think the doctrine may still be applicable. It can hardly be denied that, if defendant's workmen had been engaged in pouring fine particles of glass into the air at a point six feet above a busy city sidewalk while many pedestrians were passing, they would have been considered negligent. The testimony shows that the glass snipping operation was carried on for approximately fifteen minutes. To carry on such an operation at the place in question without maintaining a covering over the work seems to me to justify not only the refusal of the trial court to rule that there was no evidence of negli-

gence but also to furnish adequate support to sustain the verdict of the jury.

I am also of the opinion that none of the other assignments of error made by appellant are well taken, and that the judgment of the trial court should therefore be affirmed.

WOLFE, Justice.

I concur in the views expressed in the dissenting opinion of Judge HOYT.

McDONOUGH, J., being disqualified, did not participate herein.