354 P.2d 580

Daniel K. MILLIGAN, Plaintiff and Appellant,

v.

COCA COLA BOTTLING COMPANY OF OGDEN, a corporation, and Safeway Stores, Inc., a corporation, Defendants and Respondents.

No. 9161.

Supreme Court of Utah.

July 21, 1960.

1. Sec. 40-1-3, Utah Code Annotated, 1953.

Wade, J., and Crockett, C. J., dissented in part.

---

Rawlings, Wallace, Roberts & Black, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, Salt Lake City, Young, Thatcher & Glasmann, Ogden, for respondents.

HENRIOD, Justice.

Appeal from a summary judgment against plaintiff who sued the bottler and also the retailer of Coca Cola, for damages allegedly suffered when he swallowed a paper clip which the bottle contained. Affirmed, with costs to defendants.

Plaintiff's complaint sought recovery on one or more of three theories: 1) under the res ipsa loquitur principle, 2) on an implied warranty and 3) for violation of the statutes on adulterated food.

As an incident to this litigation, and before pre-trial or trial, plaintiff's deposition was taken, and developed what we consider to be the pertinent facts: He had purchased two six-packs of "Coke" from Safeway, and placed them in an unlocked fruit room connecting with his garage, which in turn was connected to his house. At times when he had his car parked in the garage, the overhead door was open. His married daughter lived next door and she and her husband visited back and forth with plaintiff. Children and teen-agers lived in the neighborhood. At a birthday party where invitees were free to go to the fruit room for a Coke, 11 of the bottles were used. The remaining bottle was left in the fruit room, when, about five weeks later, in drinking from it plaintiff swallowed the paper clip. Another clip was discovered in the bottle later.

At the pre-trial plaintiff chose to stand on his complaint. The Coca Cola people offered to demonstrate the great care with which their bottling was accomplished. Summary judgment followed, on motion of defendants. After such judgment and before notice of appeal there was no effort on the part of plaintiff to be relieved from the judgment, or to proffer anything else in the way of anticipatory proof, other than was before the court.

Counsel concedes that unless we reverse the Jordan case[1] it would be controlling as to his res ipsa loquitur argument. He suggests such reversal, but we are not constrained to agree. Chief Justice Pratt pointed up the injustice that might eventuate by inferring negligence against a bottler in a case like this, where the container has a cap that easily can be removed and replaced without detection, and over which container the bottler has no further control in the hands of intermediaries including retailers, ultimate consumers, invitees to a party, or others who easily could have had access to the bottle. No matter how careful or free from responsibility the bottler may be, and though it be impossible to demonstrate those facts in a given case, failure to do so could result in liability without a plaintiff's presenting proof of anything, except by way of an inference.

Counsel for all parties seemed to concede at the oral argument that under the doctrine, liability might be predicated only if the adulteration of the beverage was accomplished while the container was in the control of the bottler. None suggested that if there were no such control at said time, or that there was loss of control thereafter, usually accepted perquisites in applying such doctrine would be present, i. e., that 1) the injurious circumstances must be of a

1. Jordan v. Coca Cola Bottling Co., 1950, 117 Utah 578, 218 P.2d 660, 52 A.L.R.2d 108.

kind that ordinarily does not happen, absent someone's negligence, and 2) must be caused by an instrument *under the control and management of the defendant*.[2] To say that the bottler here had any control when the plaintiff purchased the bottle from Safeway, and thereafter, simply would be to blind oneself to the facts.

 As to the breach of warranty and violation of the adulteration statute phases of plaintiff's assertions, there was nothing in the complaint but general allegations of breach and violation. There was nothing in plaintiff's deposition suggesting facts probative of such allegations. He admitted that what he had stated in his deposition was all the factual information he had. At the time of such deposition, his counsel was present and suggested no further information that might be forthcoming later. There was a proffer at pre-trial by the bottler of evidence adduceable to show due care in bottling. There was no suggestion that such evidence could or would be refuted. The decision to stand or fall on what was before the court at the pre-trial, where conceivably there may have been an excuseable failure to appear, without any request to vacate the summary judgment on account of such excuseable failure, or any further offer to do anything but submit the matter on the record then available, along with the other circumstances mentioned, makes it appear to us that there was no genuine issue of fact, absent application of the doctrine of res ipsa loquitur. Hence we can but conclude that the trial court did not err in entering its summary judgment.

CALLISTER, J., concurs.

McDONOUGH, J., concurs in the result.

WADE, Justice (dissenting in part).

I am of the opinion that defendant, Coca Cola Bottling Company, failed to show that plaintiff, had he been given a trial, could not produce prima facie proof which would reasonably support a finding that the paper clips were in the bottle of Coca Cola through negligence of such defendant. Although this judgment was entitled "a nonsuit," it can be sustained only on the showing necessary for a summary judgment. Such judgment requires a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [1]

I think the circumstantial evidence shown in this case would clearly support a finding against the Coca Cola Bottling Company,

---

2. 3 Utah Law Review 114.

1. See Utah Rules of Civil Procedure, Rule 56(c), 9 U.C.A.1953; also annotations to pocket supplement to Rule 56(b) and (c).

for it seems much more probable that the paper clips got into the Coca Cola bottle through that company's negligent failure to use all the modern equipment and procedure to discover these paper clips in this bottle, than that some prankster placed the clips in the bottle either while it was at the grocery store or after it was in plaintiff's home. The following statement on that subject from the case of Crystal Coca-Cola Bottling Co. v. Cathey[2] expresses my views on that question.

"* * * To decide that there was a tampering would require the jury to believe in this case that a person would go unobserved to the cooler behind the counter in a drugstore or the druggist or one of his employees would go to the cooler and place therein a bottle of Coca-Cola in which he had put a fly by removing and replacing the cap and *this without being able to foretell* who might be served that bottle or when it might be served. This, we submit, is too far-fetched for reasonable men to consider seriously. * * * The trial judge placed the question of whether res ipsa loquitur doctrine applied properly before the jury on circumstantial evidence which might well justify a finding by the jury that it did apply."

See also the following quotation from Rutherford v. Huntington Coca-Cola Bottling Co.[3]

"There is no evidence in this case from which the jury could conclude that it was more likely that some evilly disposed person took the cap off the bottle of Coca Cola, from which plaintiff later drank, inserted some small particles of glass therein, and carefully replaced the cap while the bottle sat near the vending machine, than that such procedure could have been effected after the bottles passed the final inspection at the defendant's plant, and before they were delivered to the Bordon Company. * * *"

So in this case I think it very improbable and only a remote possibility that someone, either prankster or otherwise, would go to the grocery store or plaintiff's home and remove the cap from this bottle and place the paper clips therein, then replace the cap without knowing by whom or when the contents of the bottle would be consumed. If, however, the paper clips were inserted in this bottle by a prankster it could have been done before the bottles left the possession or control of the Coca Cola Bottling Company. Further, if this bottle was opened to put the paper clips in and then closed,

**2.** See Crystal Coca-Cola Bottling Co. v. Cathey, 1957, 83 Ariz. 163, 317 P.2d 1094, at page 1099.

**3.** See Rutherford v. Huntington Coca-Cola Bottling Co., 1957, 142 W.Va. 681, 97 S.E.2d 803, 809.

the fizz of the contents would thereby be destroyed and the cap would be loose. Plaintiff positively testified that the cap was not loose and that the bottle retained its regular fizz. However, if the cap was removed before the bottle left the Coca Cola Bottling Company's plant it could have been replaced by a machine, which would avoid the looseness. So, if it was a prankster who placed the paper clips in this bottle it was probably done before it left the manufacturer's plant. So I take no stock in the idea that this bottle was tampered with and paper clips placed therein after it left the Coca Cola Bottling Company's plant.

I do not overlook the fact that in Jordan v. Coca Cola Bottling Co.,[4] our holding in a similar case was contrary to the views herein expressed. There, Justice Latimer wrote a dissenting opinion with which I concurred. In the Jordan case the prevailing opinion conceded that the majority of courts held contrary to the result there reached. I think an overwhelming majority of the cases then as now hold the other way.[5] The Jordan case was based almost entirely on the showing of a modern bottling factory generally using a great number of pre-cautions to prevent such deleterious matters being inserted in the bottle at the manufacturing plant and the possibility that a prankster might have opened the bottle and put the fly in after it left the factory. As pointed out above, this latter possibility seems to me to be only a very remote possibility.

Since that decision, in Hewitt v. General Tire and Rubber Company [6] involving the liability of the manufacturer of a truck tire which exploded when filled with air preparatory for mounting, after it had been out of the possession of the manufacturer for a number of months but was concededly new, we said:

> "The present case might be likened to the cases involving exploding bottles. Some of these cases have been decided on the principle of res ipsa loquitur, whereas, others have been allowed to go to the jury upon the circumstantial evidence * * *. In these cases, evidence of defendant's care in manufacture was also submitted for the jury's determination of whether or not defendant had met his duty of care in manufacture and inspection."

4. Jordan v. Coca Cola Bottling Co., 1950, 117 Utah 578, 218 P.2d 660, 52 A.L.R.2d 108.

5. See annotation in 4 A.L.R. 1559–1561; 47 A.L.R. 148–156; 105 A.L.R. 1039–1044; 171 A.L.R. 1209–1223. Also cases cited in Restatement of the Law of Torts, Second, Sec. 328D Illustration 10, and cases cited thereunder.

6. See Hewitt v. General Tire and Rubber Co., 1953, 3 Utah 2d 354, 284 P.2d 471, 475.

Res ipsa loquitur, as I view the decisions of this court, is simply a rule governing circumstantial evidence which permits the jury to draw from the occurrence of an unusual event the inference that it was more probable than not the result of defendant's fault.[7] Accordingly, the latest statement of the American Law Institute's Restatement of the Law of Torts, Second, for April 8, 1960, Section 328D provides:

"§ 328D *Res Ipsa Loquitur*

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) The event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) Other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) The indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

Plaintiff by his deposition showed an unusual circumstance, that when he opened a bottle of Coca Cola that it had the usual pop and fizz, thus indicating that it had not previously been opened. He further showed the unusual circumstances that while drinking from the bottle a paper clip lodged in his throat and went into his stomach, that he later went to the hospital and thereafter another similar paper clip was found in the bottle that he had been drinking from. He further testified in his deposition that an X-ray first showed the clip in his stomach and the next day another X-ray showed the paper clip in his big colon. No doubt on the trial these X-rays could be made available. These showings come squarely under the rules governing res ipsa loquitur in accordance with the latest Restatement of the Law by the American Law Institute and clearly require a determination if the issue of negligence as against the Coca Cola Bottling Company by a jury.

Of course, there is the possibility, especially in the Jordan case, that plaintiff's

7. See *Stevens-Salt Lake City, Inc. v. Wong*, 1953, 123 Utah 309, 259 P.2d 586; *White v. Pinney*, 1940, 99 Utah 484, 108 P.2d 249; *Curby v. Bennett Glass & Paint Co.*, 1940, 99 Utah 80, 103 P.2d 657; *Angerman Co., Inc. v. Edgemon*, 76 Utah 394, 290 P. 169, 79 A.L.R. 40; *Moore v. James*, 1956, 5 Utah 2d 91, 297 P.2d 221.

entire claim was untrue and was faked in order to create a false ground for a recovery. In the Jordan case, plaintiff could readily pretend that he swallowed a fly from the Coca Cola bottle without there actually being a fly in the bottle and without actually swallowing it or being injured himself. However, in this case it seems very improbable that the claim was faked because it seems unlikely that plaintiff would swallow a paper clip and have X-rays of it in his stomach and colon in order to bolster up a law suit. Although the X-rays are not attached to plaintiff's deposition, if he were given a trial, he could be required to actually produce them and thereby confirm his claim or its falsity be made to appear. This situation to my mind clearly presents a jury question. The question of whether or not plaintiff's claim was faked has nothing whatever to do with the doctrine of res ipsa loquitur or circumstantial evidence, for plaintiff's claim that he swallowed a paper clip from a Coca Cola bottle is based on his positive testimony to that effect and does not depend on circumstantial evidence nor res ipsa loquitur.

I, however, do not think there was any showing of negligence either under the res ipsa loquitur doctrine or circumstantial evidence as against Safeway Stores, Inc.

CROCKETT, C. J., concurs in the views expressed by WADE, J.