**Dee Dee VANDERWATER,
Plaintiff-Appellant,**

v.

**Roger HATCH, Defendant-Appellee.**

No. 85–2110.

United States Court of Appeals,
Tenth Circuit.

Dec. 7, 1987.

S. Rex Lewis and Danielle Eyer Davis of Howard, Lewis & Petersen, Provo, Utah, for plaintiff-appellant.

Stephen G. Morgan and Brad Holm of Morgan, Scalley and Reading, Salt Lake City, Utah, for defendant-appellee.

Before McKAY, LOGAN and ANDERSON, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff, Dee Dee Vanderwater, brought this diversity action seeking damages for injuries she suffered in a collision between a motorcycle on which she was a passenger and a yearling cow owned by defendant, Roger Hatch. The action was tried to a jury, which returned a verdict in favor of the defendant. On appeal, Vanderwater argues that (1) the district court erred in refusing to instruct the jury on the doctrine of *res ipsa loquitur;* (2) Utah Code Ann. §§ 41–6–38 and 4–25–8 discriminate among similarly situated plaintiffs in actions involving unrestricted livestock, violating the Equal Protection Clause of the Fourteenth Amendment; and (3) the district court erred in denying her motion for a new trial based on overwhelming evidence against the verdict, newly discovered evidence, and alleged juror misconduct.[1]

The collision occurred at approximately 10:00 p.m. on a stretch of rural highway in northern Utah, adjacent to a fenced pasture owned by Hatch in which he was then keeping approximately twenty-five yearling cattle. Beginning one-half to three-fourths of a mile west of the accident scene, the highway crosses a five-mile stretch of open range in which cattle are permitted to wander without restriction. *See* Utah Code Ann. § 41–6–38. Hatch kept about 120 cows on this open range, where there were also 400 to 500 cows belonging to other area ranchers. Hatch testified that most of his range cattle were cows with calves, but that he also kept a few yearlings on open range.

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

Two witnesses travelling the opposite direction from plaintiff reported passing through a group of dark-colored cattle on the road seconds before the collision. One, Arthur DeSorcy, remembered seeing five or six cattle standing in the road. The other witness, Rennie DeSorcy, remembered seeing "ten to as many as 15" cattle, which he described as "half way between a calf and an adult cow as far as the size of them." II R. 124–25. The yearling cow involved in the accident was killed; there was no clear testimony concerning where the other cattle went or were taken following the accident.[2]

Scott Hatch, defendant's son, testified that he had checked the cattle in the fenced pasture twice during the evening in question, once at about 5:00 p.m. and again at 8:30 or 9:00 p.m., and had seen nothing wrong. He also stated that when he arrived at the accident scene later that evening, the gate to the pasture was closed; and when he went by the next morning he observed no holes in the fence, and the same number of cattle appeared to be in the pasture. Scott Hatch admitted that cattle had escaped from this pasture in the past by breaking a wire tie securing the gate facing the highway.

## I

Under Utah law, the doctrine of *res ipsa loquitur*, when applicable, permits the trier of fact to infer negligence on the defendant's part from the circumstances surrounding an injury, even though the plaintiff "is unable to produce evidence pinpointing a given act or omission on the part of defendant which breached a legally imposed standard of care." *Anderton v. Montgomery*, 607 P.2d 828, 833 (Utah 1980). To be entitled to an instruction on *res ipsa loquitur*, the plaintiff must produce sufficient evidence to permit the jury to find the following three prerequisites to an inference of negligence:

"(1) the event causing the damage is of a type that ordinarily would not happen except for someone's negligence; (2) the damage must have been caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the plaintiff's own use of the agency or instrumentality was not primarily responsible for the injury."

*Ballow v. Monroe*, 699 P.2d 719, 721 (Utah 1985); *Anderton*, 607 P.2d at 833.[3]

Defendant Hatch admits the third prerequisite: that plaintiff was not primarily responsible for the injury. Further, Utah does not apply literally the requirement of defendant's exclusive control; the evidence need only demonstrate "the probability that the defendant was responsible for the damage caused." *Ballow*, 699 P.2d at 721. Therefore, we focus primarily on the first prerequisite. A plaintiff satisfies this requirement by showing a basis in common knowledge or expert testimony for concluding that the occurrence causing the injury is "more probably than not the result of negligence." *Id.* at 722 (quoting *Talbot v. Dr. W.H. Groves' Latter-Day Saints Hospital, Inc.*, 21 Utah 2d at 73, 440 P.2d 872, 873 (1968)). The plaintiff is not required to negate all possible inferences of non-negligence, *Ballow*, 699 P.2d at 722, and the trial court must consider the evidence in the light most favorable to the plaintiff. *Anderton*, 607 P.2d at 833.

Negligence may not always be inferred, however, from the mere fact that an injury

---

**2.** A state trooper called to the scene testified that he saw several animals along the roadway west of the accident, near where the open range began. Rennie DeSorcy testified that a few minutes after the accident he saw one or two people herding the cattle off to the north side of the road in a westerly direction. A portion of defendant Hatch's deposition was read to the jury, in which Hatch, who was away from home on the night of the accident, recalled being told by either his son or a highway patrolman that the remaining loose cattle had been run back "in that field." III R. 35. Scott Hatch, defend-

ant's son, denied having seen any loose cattle at the scene of the collision, other than the yearling that was killed.

**3.** If the judge finds sufficient evidence to instruct the jury and the jury finds that these prerequisites have been established, it is then still free to either accept or reject the inference of negligence; under Utah law, *res ipsa loquitur* does not establish a presumption of any kind. *Ballow*, 699 P.2d at 723.

occurred. When the circumstances, as revealed by the evidence produced, are as consistent with an unavoidable accident as with negligence, the plaintiff is not entitled to a *res ipsa loquitur* instruction. *See Ballow*, 699 P.2d at 722–23 (plaintiff failed to make sufficient showing that fire was probably caused by defendant's negligence); *Curby v. Bennett Glass & Paint Co.*, 99 Utah 80, 103 P.2d 657, 659 (1940) (no basis in common knowledge to support finding that negligent glass clipping was probable cause of injury); *Zampos v. United States Smelting, Refining and Mining Co.*, 206 F.2d 171, 177 (10th Cir.1953) (finding under Utah law "a complete absence of any showing that the flood was of a character which ordinarily does not occur in the absence of negligence").

The probability of negligent conduct on the defendant's part may be established either by referring to the "common experiences of the community," or by expert testimony. *Ballow*, 699 P.2d at 722; *Talbot*, 440 P.2d at 874. In the instant case, plaintiff presented no expert testimony. We must therefore determine whether there is some basis in common knowledge and experience from which the jury could reasonably have concluded that the presence of livestock on a public highway is more probably than not the result of the owner's negligence.

Although no Utah court has ruled on this precise question, the issue has arisen in several other jurisdictions. The courts are split. Some have held *res ipsa loquitur* applicable to collisions with domestic animals on highways. *See, e.g., Nuclear Corporation of America v. Lang*, 480 F.2d 990, 993–94 (8th Cir.1973) (applying Nebraska law); *Mercer v. Byrons*, 200 F.2d 284, 286–87 (1st Cir.1952) (applying Massachusetts law); *Martinez v. Teague*, 96 N.M. 446, 631 P.2d 1314, 1318 (Ct.App. 1981) (distinguishing prior cases); *Watzig v. Tobin*, 292 Or. 645, 642 P.2d 651, 655–56 (1982). Other courts have held the doctrine inapplicable. *See, e.g., Poole v. Gillison*, 15 F.R.D. 194, 198–99 (E.D.Ark.1953) (applying Arkansas law); *Barnes v. Frank*, 28 Colo.App. 389, 472 P.2d 745, 746–47 (1970) (doctrine not applicable when a motorist

strikes cattle loose on a highway); *Reed v. Molnar*, 67 Ohio St.2d 76, 423 N.E.2d 140, 145 (1981) (noting split of authority); *Brauner v. Peterson*, 16 Wash.App. 531, 557 P.2d 359, 361 (1976) (presence of animal at large on the highway not sufficient to warrant application of *res ipsa loquitur*). *See generally* Annotation, *Liability of Owner of Animal for Damage to Motor Vehicle or Injury to Person Riding Therein Resulting from Collision with Domestic Animal at Large in Street or Highway*, 29 A.L.R. 4th 431, 466–70 (1984). For the reasons discussed below, we are convinced that the Utah Supreme Court would not find a *res ipsa loquitur* instruction appropriate in the instant case.

First, the accident occurred only a short distance from an open range area where, under Utah law, cattle are permitted to roam without restriction. The Utah legislature plainly has exempted livestock owners from liability for accidents involving range stock:

"No person owning or controlling the possession of any livestock, shall willfully or negligently permit any such livestock to stray upon or remain unaccompanied by a person in charge or control thereof upon a public highway, both sides of which are adjoined by property which is separated from such highway by a fence, wall, hedge, sidewalk, curb, lawn or building; *provided, that the foregoing provision shall not apply to range stock drifting into any such highway in going to or returning from their accustomed ranges.*"

Utah Code Ann. § 41–6–38 (emphasis added). Scott Hatch testified that cows had on previous occasions wandered from the open range onto the fenced area of the highway where the collision occurred. The evidence in the instant case is at least as consistent with the view that the cow involved in the accident drifted in from open range as with the view that it escaped from defendant's fenced pasture. In light of the statutory exclusion, we do not believe there is a reasonable basis here for concluding the

injury is more likely than not the result of negligence.[4]

Second, even were we to assume that the cow involved in the accident had escaped from Hatch's fenced pasture, Utah case law gives at least some indication that a *res ipsa loquitur* instruction would not be appropriate. In *Rhiness v. Dansie,* 24 Utah 2d 375, 472 P.2d 428 (1970), the plaintiff's car collided with one or more horses that had escaped from the defendant's pasture. In ruling for defendant, the court said, "The mere fact that the animals escaped from the enclosure is not sufficient evidence, standing alone, to justify the submission of defendant's negligence to the jury." *Id.,* 472 P.2d at 430. That opinion did not directly address the doctrine of *res ipsa loquitur,* and on its facts the case is distinguishable.[5] But *Rhiness* at least implicitly rejects the proposition plaintiff Vanderwater is advancing in the instant case, that common knowledge is a sufficient substitute for evidence identifying the cause of the animals' escape. Thus, we conclude that the district court properly refused to give the requested instruction on *res ipsa loquitur.*

## II

Plaintiff argues that Utah Code Ann. § 41–6–38 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it imposes a greater burden of proof on her than Utah Code Ann. § 4–25–8 imposes on other plaintiffs similarly situated. Section 4–25–8 generally imposes strict liability on the owner of any livestock "that trespasses upon the premises of another person ... to the owner or occupant of such premises for any damage inflicted by the trespass." *Id.; see Nelson v. Tanner,* 113 Utah 293, 194 P.2d 468, 470 (1948) (interpreting former code section). Vanderwater construes such damage to include personal injuries. *See Restatement (Second) of Torts* § 504(2) (1977) (possessor of trespassing livestock is strictly liable for harm "to the land or to its possessor or a member of his household").

■ We conclude that plaintiff's equal protection challenge is without merit. Because the statutes in issue do not employ suspect classifications or implicate fundamental rights, they "must be upheld against equal protection attack [if] the legislative means are rationally related to a legitimate governmental purpose. Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981) (citations omitted). The challenged classifications will be set aside "only if no grounds can be conceived to justify them." *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).

■ We cannot find it irrational for the Utah legislature to treat persons injured on public highways differently from those injured on their own lands. The legislature reasonably could have concluded that peo-

---

**4.** § 41–6–38 further provides:

"In any civil action brought by the owner, driver or occupant of a motor vehicle or by their personal representatives or assignees, or by the owner of the livestock for damages caused by collision with any domestic animal or animals on a highway, there is *no presumption* that such collision was due to negligence on behalf of the owner or the person in possession of such livestock."

(Emphasis added). Because *res ipsa loquitur* merely raises a permissible inference, not a presumption of negligence, § 41–6–38, read narrowly, would not prohibit application of the doctrine in all cases. In *Anderson v. I.M. Jameson Corp.,* 7 Cal.2d 60, 59 P.2d 962 (1936), the court gave precisely this narrow interpretation

to a similarly worded California statute. *Id.,* 59 P.2d at 965. At the least, however, § 41–6–38 evidences legislative recognition that domestic animals may escape and venture onto public highways even in the absence of any negligence on the part of their owners. *Cf. Hyrum Smith Estate Co. v. Peterson,* 227 F.2d 442, 444 (10th Cir.1955) (§ 41–6–38 places burden on plaintiff "to establish acts of negligence to entitle him to have his case submitted to the jury").

**5.** In *Rhiness,* the defendant's pasture was separated from the highway and an adjoining railroad track by a fence maintained by the railroad. A gate in this fence, used by the defendant and other area ranchers, was partially open at the time of the collision.

ple's interest in the crops, fences, and even personal security on their own land is both greater and different in kind than travelers' interest in safety on the highway. We need not agree with the different burden of proof imposed by the statute in order to uphold its constitutionality; nor need we inquire further into the actual, subjective motivation of the Utah legislature. *See United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461 66 L.Ed.2d 368 (1980). The interests involved are sufficiently dissimilar to reasonably warrant the different degrees of protection provided by §§ 4–25–8 and 41–6–38.[6]

### III

We find no error in the district court's denial of plaintiff's motion for new trial based on overwhelming evidence, newly discovered evidence, and alleged juror misconduct. Part I of this opinion is sufficient to dispose of the first of these contentions. We will not reverse a district court's denial of a new trial motion based on weight of the evidence absent a "manifest abuse of discretion." *Brown v. McGraw-Edison Co.,* 736 F.2d 609, 616 (10th Cir.1984). Here, the district court did not abuse its discretion in finding that the evidence supported the jury's verdict.

█ The "newly discovered" evidence consists of the testimony of an ex-deputy sheriff, Charles Youngblood, who apparently was also present at the scene of the collision. Youngblood would testify that "there were cattle out on both sides of the road near the accident scene," and that "fenced cattle will tend to leave a field that is partially fed down to get to grasses located along the ditches of the highway." Appellant's Brief at 43–44. In *McCullough Tool Co. v. Well Surveys, Inc.,* 343 F.2d 381 (10th Cir.1965), *cert. denied,* 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851

(1966), we held that a party seeking a new trial on the basis of newly discovered evidence must show:

> "that the alleged newly discovered evidence was discovered since the trial; facts from which the court may infer reasonable diligence on the part of the moving party; that the evidence is not merely cumulative or impeaching; that the evidence is material; and the evidence is of such a character that on a new trial it will probably produce a different result."

*Id.* at 410. Even if counsel acted diligently in discovering the proffered evidence, it is largely cumulative and there is very little probability that it would lead to a different result on retrial. Therefore, we find no abuse of discretion on this ground.

Finally, plaintiff's motion stated that defendant Hatch was observed during a recess in the trial talking with two members of the jury in an enclosed area of the hallway outside the courtroom. Plaintiff, however, offered no explanation for having failed to bring this alleged misconduct to the court's attention before the jury retired to consider its verdict. In its order denying plaintiff's motion, the district court stated that it would not

> "grant a new trial based on claimed misconduct known about by a party during trial and where such claimed misconduct was not then brought to the attention of the court with an opportunity for the court to then inquire into such and possibly correct it, or, if it couldn't be corrected, grant a mistrial."

I R. 196–97.

█ Subject to exceptions when the conduct alleged clearly affects the fundamental fairness of the proceedings, an objection alleging juror misconduct may be rejected if not raised in a timely manner. *See Wilson v. Ward Baking Co.,* 318 F.2d

---

**6.** Vanderwater also argues that § 41–6–38 is unconstitutional on its face because it discriminates between persons injured in collisions with animals and persons "sustaining damages caused by an animal on the highway, but *without actual contact or collision* with the animal" by burdening the former with a "no presump-

tion" rule. Appellant's Brief at 39 (emphasis in original). Although § 41–6–38 does not literally apply to actions in which there is no collision with animals, nothing in that section relieves plaintiffs in such actions of the burden of proving negligence.

674, 676 (6th Cir.1963); *Johnson v. Hill,* 274 F.2d 110, 116 (8th Cir.1960); *Nolan v. Nolan,* 97 F.R.D. 537, 540–41 (S.D.W.V. 1983); 6A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 59.08[4] at 59–123 (1982); *see generally* Annotation, *Contact or Communication Between Juror and Party or Counsel During Trial as Ground for Mistrial, New Trial, or Reversal,* 62 A.L.R.2d 298 (1958). Vanderwater alleges no such exceptional circumstances here. Accordingly, the district court's denial of the motion in the instant case was well within its discretion.

AFFIRMED.